Jerome J. VENKER, Appellant,

v.

Charles G. HYLER, Raymond R. Roberts,
and The Daily St. Francois County Jour-
nal, Inc., a Corporation, Respondents.

No. 48594.

Supreme Court of Missouri,

Division No. 1.

Jan. 8, 1962.

Donald E. Gillihan, Farmington, for ap-
pellant.

Roberts & Roberts, Farmington, for re-
spondents, Charles G. Hyler and Raymond
R. Roberts.

Smith & Colson, Farmington, for re-
spondent, The Daily St. Francois Journal,
Inc.

HOLLINGSWORTH, Judge.

In this action for alleged libel, plaintiff
sought actual damages in the sum of $250,-
000 and punitive damages in the sum of
$250,000. Plaintiff conducts a retail drug-
store in the City of Desloge. Defendant
The Daily St. Francois County Journal,
Inc., with offices in the City of Flat River,
publishes a newspaper of general circula-
tion in said county; defendants Raymond
R. Roberts and Charles G. Hyler are, re-
spectively, the prosecuting attorney and as-
sistant prosecuting attorney of said county.

Following notice given by defendants to
take depositions, plaintiff, acting on advice
of counsel, refused to respond to a sub-
poena duces tecum to appear and give his
deposition and to produce in evidence cer-

tain books, records, containers and prescriptions for drugs. The trial court, on motion of defendants, dismissed plaintiff's petition with prejudice. Plaintiff appealed. The amount in dispute vests this court with jurisdiction. Constitution of Missouri, Art. V, § 3, V.A.M.S.; Section 477.040 RSMo 1959, V.A.M.S. (All statutory references herein are to that revision unless otherwise indicated.) A statement of undisputed background facts, as gleaned from the pleadings and colloquy between court and counsel, will be of aid.

On October 24, 1960, defendant newspaper carried a news article headed "Reveal Illegal Drug Sales By Desloge Druggist; Two Wanted Men Surrender." The article, insofar as here material, recited that through the combined efforts of the St. Francois County sheriff's department, Prosecuting Attorney's office, the State Highway Patrol, and the Farmington city police department, plaintiff herein had been arrested and released on bond in a misdemeanor case for illegal sales of "strong drugs". See Sections 195.220–195.270. The article then attributed to defendant Raymond R. Roberts certain statements as to the manner in which the facts "came into the light" and that plaintiff had readily admitted the illegal sales when questioned.

Five days after that article appeared plaintiff filed this action. Defendants promptly served notice to take depositions beginning on November 9, 1960. That notice, however, did not advise plaintiff of the witnesses to be examined as required by S.Ct. Rule 57.08, V.A.M.R. Nevertheless, a notary public issued a subpoena *ad testificandum* directed to plaintiff's counsel and a subpoena *ad testificandum* and *duces tecum* to produce the hereinafter specified items in evidence directed to plaintiff. These subpoenas were served by the sheriff on November 5, 1960. On the same day plaintiff filed in the circuit court a document entitled "Motion For Protective Order", reciting the fact of his arrest for and his being charged with the aforesaid criminal acts and averring that

the Constitutions of the United States and this State assured him of the right of a speedy trial; that his attorney's full time was needed to insure him of that right; that denial of his attorney's full time would constitute "an oppression for which protectives orders may be granted"; that his attorney believed that the criminal action could be disposed of within about one month and that thereafter his attorney would be available "for work on the [libel] action." The prayer of the motion was that defendant be prevented from taking depositions until December 9, 1960.

On November 7, 1960, the "motion for protective order" was heard and by the court overruled. On November 10, 1960, defendants filed their motion to strike plaintiff's petition and to dismiss his action with prejudice, to which they attached a copy of the subpoena duces tecum and a transcript of the proceedings held before the notary on the 9th day of November, 1960, at the hour and place set for the taking of depositions of plaintiff and his counsel. The subpoena duces tecum served upon plaintiff commanded him to bring with him and at said hearing produce in evidence the following:

"1. All perscriptions (sic) for Dextrine and similar stimulant amphetamine or any of its derivatives which have an exciting effect on the central nervous system of a human or animal for the past five years or since you have been in business in Desloge, Missouri.

"2. All invoices and records of provisions from all sources of supply of Dextrine and similar stimulant amphetamine or any of its derivatives which have an exciting effect on the central nervous system of a human or animal for the past five years or since you have been in business in Desloge, Missouri;

"3. All books and records of sale of Dextrine and similar stimulant amphetamine or any of its derivatives

which have an exciting effect on the central nervous system of a human or animal for the past five years or since you have been in business in Desloge, Missouri;

"4. The original container or all containers from which the Dextrine sold L. Marie Coleman on the 20th day of October, 1960, or at any other time was taken or removed;

"5. All perscriptions (sic) for Mrs. Ruth Noor or L. Marie Colman in your possession;

"6. All perscriptions (sic) from and/or containing the name or purported name of Doctor Cresswell of Potosi, Missouri."

The transcript, as certified by the notary, recited that counsel for plaintiff appeared at the time and place set for taking the depositions and advised the notary and counsel for defendants: that plaintiff refused to appear on advice of his counsel on grounds that the notary had no power to issue a subpoena duces tecum and which, plaintiff's counsel contended, could be issued only under S.Ct. Rule 57 on order of the circuit court in which the libel action was pending; that the judge of the trial court, in overruling plaintiff's "motion for protective order" had advised plaintiff's counsel that defendants had a right to take these depositions after plaintiff had "opened the gate and filed suit"; that plaintiff, therefore, was willing to come before the notary on proper notice and produce any evidence which the trial court in its discretion saw fit for plaintiff to produce as required by S.Ct. Rule 57 and that he would like to have the matter of plaintiff's appearance heard by the trial court "today, if possible, and [that] upon a ruling by the Circuit Judge the plaintiff [would] in every respect abide by [said] ruling." The notary's transcript further recited that plaintiff's counsel was thereupon advised by counsel for defendants that in view of plaintiff's failure to appear after having been subpoenaed defendants expected to file

their motion to dismiss plaintiff's case with prejudice regardless of plaintiff's willingness to bring to any future hearing the items called for in the subpoena duces tecum. (Plaintiff's counsel also expressed his willingness to testify in response to the subpoena directed to him, but no effort to take his deposition is shown and his failure to testify drops from the case.)

On November 12, 1960, plaintiff filed "Motion To Strike Defendant's Notice To Take Depositions For Failure To Comply With Supreme Court Rule 57.08 And To Void All Proceedings Had Thereunder." (That motion was never ruled, but that fact is immaterial.) On November 14, 1960, counsel for the parties appeared before the trial court where the foregoing incidents, pleadings and especially the merits of defendants' motion to dismiss plaintiff's action with prejudice were discussed at length. During this discussion, it developed that on the 10th day of November, 1960, plaintiff's counsel, by telephone, advised defendants' counsel that following additional research he was willing forthwith to produce plaintiff on that day or the next day as would meet with the convenience of counsel for defendants. The trial court stated that although plaintiff's counsel had not acted in bad faith, but "I think you're in trouble, your client is in trouble," and that the court had in mind the dismissal of "your action for several reasons. Primarily, the failure to recognize the validity of that [ad testificandum portion of the subpoena served upon plaintiff] to testify and I don't believe I have any other course." Thereafter, on November 23, 1960, the court entered its order that "plaintiff's petition be and is hereby dismissed with prejudice, at plaintiff's costs."

Plaintiff insists that the portion of the subpoena duces tecum commanding plaintiff to produce in evidence at the time and place fixed for the taking of depositions was void because it was not made on order of the trial court in which the libel case was pending as is expressly required by S.Ct. Rule 57.20; and that even though said sub-

poena further commanded him "then and there to testify" in said case, yet plaintiff's refusal to appear was not contumacious but instead was upon advice of counsel in good faith upon well-founded belief that the essential purpose of the subpoena was to require the production and identification of the things therein called for; and that, upon learning that defendants stressed plaintiff's failure to appear *as a witness*, plaintiff's counsel promptly offered forthwith to produce plaintiff or at such time as would suit defendants' convenience; and that, under the circumstances here shown, the dismissal of plaintiff's action with prejudice is unjustly harsh and constitutes an abuse of discretion.

Defendants contend that the subpoena was valid and enforceable in both respects, i. e., *ad testificandum* and *duces tecum* to produce in evidence the items described therein. In support of that contention they stress the provisions of S.Ct. Rule 57.19, which empowers notaries public "to issue subpoenas for witnesses to appear and testify, and to compel their attendance in the same manner and under like penalties as any court of record of this state"; and which further provides that "any person summoned as a witness by virtue of the provisions of this rule, * * * who shall refuse to produce documentary evidence or tangible things, in compliance with a court order or subpoena, may be committed to prison * * *", etc. For the reasons hereinafter stated, the power vested by Rule 57.19 in notaries public to punish a witness who refuses to produce documentary evidence or tangible things in compliance with a court order or subpoena presupposes that such subpoena or order was validly issued as required by S.Ct. Rule 57.20.

Defendants further insist, however, that if the subpoena was improperly issued in the latter respect, plaintiff waived such defect and willfully disobeyed the valid command therein contained to appear and testify as a witness; and that the court did

not abuse its discretion in dismissing his action with prejudice.

Prior to enactment of the Civil Code of Missouri in 1943, Laws 1943, p. 353, effective January 1, 1945, notaries public were authorized by statute to take depositions and to issue subpoenas for and to compel the attendance of witnesses thereat in the same manner and under like penalties as in courts of record. There was, however, no statute authorizing any court or official to require the production of books or papers at the taking of such depositions. In 1916, this court, en banc, in the case of State ex rel. McCulloch v. Taylor, Circuit Judge, 268 Mo. 312, 187 S.W. 1181, 1183, stated the law to be: "While ample power has been conferred on the courts to require, on the application of a litigant, the production by the adversary party of books and papers (article 12, c. 21, R.S.1909) and by the process of a subpoena duces tecum to require of other witnesses a like production (Shull v. Boyd, 251 Mo. [452,] loc. cit. 473, 158 S.W. 313), there is no statute authorizing this procedure in the taking of depositions. In an early case decided by this court (Ex parte Mallinkrodt, 20 Mo. 493) it was held that a notary public had no power to commit a witness for refusing to produce books and papers under a subpoena duces tecum; the reason stated being that the power conferred to take depositions is purely of statutory creation and its terms cannot be extended. * * * There is no room here for the application of the doctrine of the inherent power of the court; this, in a general way, is applicable only when it is necessary to the court's existence and in the proper exercise of its duties imposed by law."

And so the law remained, sections 492.-090 and 492.270, until the adoption of the new code in 1943, section 142 of which, presently section 492.280, provided: "Upon order of the court in which a cause is pending a subpoena may command the production of documentary evidence on the taking of a deposition and the court may also order a party to produce documentary evi-

dence on the taking of a deposition." See also State ex rel. Stroh v. Klene, 276 Mo. 206, 207 S.W. 496, 497.

That section, pursuant to the provisions of Article V, § 5, Constitution of Missouri, was superseded by S.Ct. Rule 57.20, effective April 1, 1960. It provides: *"Upon order of the court in which a cause is pending,* or, in case of a deposition to perpetuate testimony, upon the order of any court authorized to grant a commission to take such a deposition, *a subpoena may issue with or without notice, commanding the production of documentary evidence on the taking of a deposition, and the court may also order a party to produce documentary evidence on the taking of a deposition.* In case of objection the party objecting may move summarily on notice to the opposite party to quash or limit, which motion shall be heard without delay." (Italics supplied.)

■ The language of both the statute, section 492.280, and S.Ct. Rule 57.20, considered in the light of the law as it was announced in State ex rel. McCulloch v. Taylor, supra, was clearly intended to and did change the existing law so as to authorize generally the issuance of a subpoena commanding the production of *documentary evidence* "upon order of the court in which a cause is pending." Moreover, although both the statute and the rule expressly state that "the court may also order a *party* to produce *documentary evidence* on the taking of a deposition", and although the rule provides generally that the order of the court for issuance of subpoenas duces tecum "may issue with *or without notice*", no provision for issuance of an order of the court without notice on ex parte application is made in the case of such an order directed to *a party* to produce.[1] Consequently, the issuance of the subpoena duces tecum

*directed to plaintiff* without prior order of the circuit court in which the libel suit was pending was void. This being so, plaintiff's action is not to be dismissed with prejudice for failure to produce in evidence any of the documents or things commanded by that subpoena.

But defendants say (and apparently the trial court agreed) that plaintiff's refusal to appear and submit to oral examination required the dismissal with prejudice. In urging this contention in the trial court and in this court defendants rely upon the case of State ex rel. McCulloch v. Taylor, supra, 268 Mo. 312, 187 S.W. 1181. In that case, McCulloch, as relator, sought our original writ in prohibition to prevent the circuit court of the City of St. Louis from compelling his attendance as a witness before a special commissioner of that court to take his deposition and to require him to produce in evidence two letters received by him from a party to the action. The trial court, as hereinabove stated, held the portion of the subpoena requiring relator to produce said letters void, but further noted, 187 S.W. 1. c. 1183: "Relator was required to appear before the commissioner as a witness as well as to produce the letters designated. * * * It lies at the foundation of good government that its citizens shall respond without delay when their services are required in the administration of justice. This was not done in the instant case, and we find no such lack or excessive exercise of jurisdiction as to warrant our interference." The court for the latter reason decided that there was no lack or excessive exercise of jurisdiction such as to "warrant our interference" and quashed the provisional writ. That case merely holds that the relator who had been duly subpoenaed to give his deposition in a case in which he was not a party was bound

---

1. In this connection, it should further be noted that S.Ct. Rule 58 provides a comprehensive procedure (surrounded by proper safeguards of the rights of all persons affected) for requiring production *by a party* of both documents and other tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 57.01(b) and which are in his possession, custody or control.

to obey the command. It does not hold or even intimate that under the circumstances here shown plaintiff's action should be dismissed with or without prejudice.

■ Defendants also direct attention to section 491.180, which provides: "If a party, on being duly summoned, refuse to attend and testify, either in court or before any person authorized to take his deposition, besides being punished himself as for a contempt, his petition, answer or reply may be rejected, or a motion, if made by himself, overruled, or, if made by the adverse party, sustained." They also cite several cases upholding the action of the trial court in dismissing or refusing to dismiss a party's pleadings in accordance with the discretion with which the courts are vested under that statute. Kaiser v. Gardiner, Mo.App., 211 S.W. 883, 884, states the rule thus: "While it is true the discretion of the trial court must be exercised with justice and wisdom, as affected by the facts and circumstances affecting the matter in hand, and while such discretion is open to review by an appellate court, yet the party seeking to substitute the discretion of an appellate court for that of the trial court must present a strong and clear case." To this same effect are: Graveman v. Huncker, 345 Mo. 1207, 139 S.W.2d 494, 499; Franklin v. Franklin, 365 Mo. 442, 283 S.W.2d 483, 486; Gragson v. Gragson, Mo.App., 290 S.W.2d 420, 422. We have no hesitancy in reaffirming the rule therein announced, but we are convinced that under the circumstances in this case the dismissal of plaintiff's action *with prejudice* is unjustly harsh. "A statute providing for a nonsuit has been held not to be mandatory. It has been stated that the dismissal of a party's cause of action is drastic punishment, and should not be invoked except in those cases where the actions of the party show a deliberate and contumacious disregard of the authority of the court." 27 C.J.S. Dismissal & Nonsuit § 59, p. 407. And we here note that S.Ct. Rule 67.02, which prescribes penalties for violations of the rules here under discussion, provides: "For failure of the plaintiff * * * to comply with these rules or any order of court, a defendant may move for dismissal of an action or any claim against him." No contention is here made that plaintiff failed or refused to comply with *any order of court* and the only rules violated by him were those portions of Rules 57.03 and 57.19 authorizing the notary public to take plaintiff's deposition and to issue subpoenas for witnesses "to appear and testify"; and the only penalty therein provided for the refusal of a witness to appear and testify is imprisonment, "there to remain without bail until he gives such evidence, or until he be discharged by due course of law."

■ The record tends strongly to show that plaintiff acted in good faith and upon the honestly given advice of his counsel. True, of course, that fact does not of itself relieve plaintiff of his duty to appear and give oral testimony in compliance with the valid portion of the subpoena. However, the notary's transcript affirmatively reveals that on the hour and at the place fixed for taking the depositions, plaintiff's counsel appeared and announced his willingness to have the court forthwith decide the vitally important question of the right of the notary to require plaintiff to produce the items described in the subpoena and plaintiff's willingness to abide by the ruling. Defendants, however, rejected that offer and announced their decision to force dismissal of plaintiff's case, if possible. And at the hearing before the court on the 14th day of November, it was shown that on November 10th, plaintiff's counsel, having become convinced that defendants were entitled to take plaintiff's testimony, advised defendants' counsel of his willingness to produce plaintiff forthwith or at the convenience of defendants' counsel. These facts constitute extenuating circumstances that must be given due consideration.

The administration of justice requires that insofar as reasonably may be done in accordance with orderly procedure, cases shall be decided on their merits after full

hearing. We cannot believe that sound judicial discretion warrants dismissal of plaintiff's case *with prejudice* under the circumstances here shown.

Neither party is without fault. After defendant Roberts saw fit to discuss the merits of the State's case against plaintiff with defendant newspaper, the latter saw fit to publish its version of that discussion. Thereupon, plaintiff, without awaiting the outcome of a trial of the State's case against him, precipitately filed this suit charging defendants with intentional and malicious libel for which he sought to recover one-half million dollars. With similar precipitate action and in patent disregard of the requirements of S.Ct. Rule 57.-08, declaring that a notice to take depositions should contain the names of witnesses to be examined, and S.Ct. Rule 57.20, requiring an order of court as a condition precedent to issuance of a subpoena duces tecum, defendants gave the above described notice to take depositions and caused the issuance of the subpoena.[2] Despite the irregularity of these proceedings, plaintiff filed a so-called "motion for protective order" so lacking in merit as to warrant no serious consideration. When that motion was overruled and plaintiff thereafter refused to appear and later recanted and offered to appear, defendants successfully sought and obtained the court's order of dismissal with prejudice. All of these proceedings were conceived, pleaded, heard and adjudged within less than thirty days.

We are not here concerned with the merits of the charges alleged in plaintiff's petition, yet they are of grave import and, on their face, of potential far-reaching effect. The proper and just determination thereof requires that they be tried in ac-

cordance with established rules of procedure. That does not appear to have been done in this case.

The judgment of the trial court dismissing plaintiff's action with prejudice and at the cost of plaintiff is ordered modified to the extent that plaintiff's action shall stand dismissed at the cost of plaintiff, but without prejudice to the right of plaintiff, in good faith and upon probable cause, to file the same anew within the period of limitations fixed by statute for the filing of actions for libel.

All concur.

---

2. That subpoena sets forth sweeping demands for the production of all physicians' prescriptions for the drugs therein specified (which may expose to public knowledge numerous confidential relationships existing between physicians and patients) filled by plaintiff within the past five years. The relevancy and admissibility of these and other items demanded by the subpoena and the extent to which they may be enforced, if at all, certainly should be determined upon hearing by the court and, if ordered produced in whole or in part, inspection thereof should be under such supervision of the court as, in justice to all persons affected, it may deem necessary.