STATE of Missouri ex rel. N. W. ELECTRIC POWER COOPERATIVE, INC., a Corporation, Appellant,

v.

Donald J. BUCKSTEAD, Marjorie Buckstead, Whitman H. Hanes, Marie Beard Hanes, Guy Pine, Frances L. Pine, Homer W. Bluhm, and Milea S. Bluhm, Respondents.

No. 24320.

Kansas City Court of Appeals.

Missouri.

Feb. 7, 1966.

Charles B. Fitzgerald, Crouch & Fitzgerald, Warrensburg, Eugene E. Andereck, Pickett, Andereck & Hauck, Trenton, for appellant.

Gayles R. Pine and Pine, Welling, Jones & Mitchell, Warrensburg, for respondents.

MAUGHMER, Commissioner.

On May 7, 1962, relator, the N. W. Electric Power Cooperative, Inc. instituted condemnation proceedings to take a right-of-way easement across the lands of defendants in Johnson County, Missouri. The proposed easement was perpetual, covered a strip of land 100 feet wide and on it relator planned to construct and maintain an electric transmission line. Commissioners were duly appointed, inspected the premises and filed their report. Damages were allowed on each tract. The defendants Donald J. and Marjorie Buckstead, husband and wife, were awarded $200; Whitman and Marie Beard Hanes, husband and wife, were awarded $200; Guy and Frances L. Pine, husband and wife, were awarded $250, and Homer W. and Milea S. Bluhm, husband and wife, were awarded $500, making a total of $1150.

The landowners filed timely exceptions and upon motion the four cases were consolidated for joint jury trial. There was a jury trial with a verdict in favor of each group of defendants. Judgment in accordance with the verdict was entered and was for larger amounts than had been assessed by the commissioners. By the judgment the Bucksteads were awarded $1525, as against $200 by the commissioners; the Hanes, $1407, as against $200; the Pines, $1675, as against $250, and the Bluhms, $2500, as against $500, making a total judgment of $7,107.00.

The appellant, Cooperative, raised only one issue in its motion for new trial and raises only that same one issue on this appeal. It says the trial court ordered defendants to answer certain interrogatories, that defendants did not answer and, therefore, relator's motion to strike defendants' pleadings, including their exceptions to the commissioner's report, should have been sustained and judgment by default in favor of relator should have been entered. We

shall endeavor to present all factual occurrences relating to this one issue and pass lightly over the other trial events which are not pertinent to this appeal.

On September 4, 1962, relator submitted 14 interrogatories. Six days later the defendants filed written objections. On October 8, 1962, the matter was heard by the court and the following order was entered:

"Defendant's Objections as to Relator's Interrogatories are overruled as to all objections except as to Interrogatories 5, 9, 10, 13 and 14 which are sustained. Defendants to have 15 days in which to file answer".

The nine remaining interrogatories called upon defendants to state the legal description of their lands, in whose names title was held, all changes of ownership since the appropriation, description of all improvements, including when made and the cost thereof, what crops were on the land at the time of appropriation, the names and addresses of all tenants, the names of all sellers of comparable lands in the area during the previous two years, and the opinion of the defendants as to the fair market value of the land and of the improvements. Defendants did not and never have answered any of the interrogatories.

Nothing further was done until on January 27, 1964 (15 months later), when the Cooperative filed "Relator's Motion to strike defendants' pleadings for failure to answer interrogatories". This motion recited the court's order of October 8, 1962, requiring answers, stated that no answers had been made and prayed the court "for an order striking out the exceptions and other pleadings filed herein by the disobedient defendants heretofore referred to and enter its order rendering judgment by default in favor of relator against said disobedient defendants in accordance with Supreme Court Rule 61.01(b) (3)". This motion was never called up or brought to the court's attention until March 11, 1965 (nearly 14 months later) on which date the case had been set for jury trial and jurors were

waiting in the court room preparatory to being empaneled to try the case. At this time in the court's chambers, counsel for relator orally invited the court's attention to the motion, urged that it be sustained, requested that defendants' pleadings and exceptions be stricken and judgment by default be entered for relator. It was also requested that the court deny the defendants the right and privilege of presenting any testimony. Counsel at that time said: "I talked to Mr. Pine (one of defendants' attorneys) some short time ago. I told him I wanted these answers and he said he was having difficulty getting the answers. I told him to do the best he could and we got no answers to the interrogatories and we are now here this morning for trial without them * * *". There was no request for a continuance and no request for any other disciplinary action. The trial court denied the motion and stated:

"Well, this is the first time the Court had any official knowledge that these Interrogatories were not answered and to come now when the jury is ready to proceed with the case and the Court is ready to proceed—I feel the motion should be overruled.

"Furthermore, this is a condemnation case and you don't have to plead like you do in a divorce case or a damage suit and as I understand the law an exceptor in a condemnation case doesn't have to plead except to file exceptions and the motion will be overruled".

■ To begin with it may quickly be stated that if the court was under the impression that the rules of civil procedure are not applicable to condemnation suits it was in error. Section 523.050(2) provides:

"Such new appraisement shall, at the request of either party, be made by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages;"

We cite two opinions on this point. In State ex rel. State Highway Commission of Missouri v. James, Mo.App., 115 S.W.2d 225, 226, the court said:

"After exceptions are filed by one or both parties to the award of the commissioners in a condemnation suit, it appears that the proceedings thereafter are governed by the procedure in regular civil cases."

And in State ex rel. State Highway Commission v. Green et al., Mo., 305 S.W.2d 688, 694, the Supreme Court said:

"In a condemnation case, when exceptions have been filed to the award of the commissioners, it appears that the proceedings thereafter, upon the trial de novo to a jury, are governed by the procedure applicable to ordinary civil cases."

However, in our opinion the court denied the relator's motion for the further reason that it did not, in the exercise of its discretion, believe it was proper to sustain it.

The Supreme Court Rule 61.01 (and Sec. 510.060, V.A.M.S.) provide in part:

(a) "Upon the refusal of a party to answer any interrogatory submitted under Rule 56, the proponent of the question may move the court, on reasonable notice to all persons affected thereby, for an order compelling an answer.

(b) "If any party * * * refuses to obey an order made under paragraph (a) of this rule requiring him to answer designated questions * * * the court may make such orders in regard to the refusal as are just, and among others the following:

* * * * * *

(3) "An order striking out pleadings or parts thereof, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

■ The rule and statute say: "[T]he court *may* make such orders in regard to

the refusal as *are just,* and among others the following:" (Italics added), and then lists certain permissible sanctions. It appears from this wording that wide leeway is given the court in prescribing penalties for noncompliance. Moreover, the authorization is not mandatory, but rather permissive. It says "may" and does not say "shall". We believe, too, that broad discretion is left to the court and unless there is manifest abuse, the discretion as exercised will not be disturbed. 27 C.J.S. Discovery § 68, p. 199 tells us:

"Which of the several remedies or penalties prescribed for a failure to answer shall be adopted and enforced is within the sound discretion of the court. The court should ordinarily give the offending party a further opportunity to answer the interrogatories before imposing severe sanctions for a failure to answer."

Relator relies heavily upon the Supreme Court decision in Franklin v. Franklin, 365 Mo. 442, 283 S.W.2d 483. This was a divorce case. The wife refused to answer written interrogatories regarding the present status of her previous marriage to another and similar questions put to her orally at the hearing on her motion for temporary allowances, on the ground that the answers might tend to incriminate her. The trial court apparently accepted her legal position in this regard as sound and notwithstanding her refusal to answer these pertinent inquiries, awarded her temporary allowances. The Supreme Court held that since divorce is an equitable proceeding, where a proponent is required to show "clean hands", the wife must answer the questions, else she should be denied affirmative relief and her failure and refusal to answer would justify striking her pleadings. However, it should be noted that the appellate court did not strike her pleadings or refuse her judgment outright, but rather "to the end that no injustice may be done" reversed and remanded for further proceedings in accordance with the views expressed by the court. As we read the opinion it does not find that the trial court abused its discretion, but rather misinterpreted the law.

Graveman v. Huncker et al., 345 Mo. 1207, 139 S.W.2d 494, 499, was a suit to set aside deeds. We quote from the opinion:

"In the instant case plaintiff made no effort to have defendants Edwin and Louise compelled to answer questions propounded on their depositions or to have them punished for contempt for refusing to answer. He elected to stand on his supposed right to move to have their answers stricken at the trial. The court refused to strike the answers. At the trial they both testified fully and so far as we can see from the record without attempt at reservation or evasion. We are unable to see from the record before us that plaintiff was prejudiced by said defendants' refusal to answer questions on the taking of their depositions. We do not mean to say that their conduct on that occasion is to be commended or that it is safe procedure. Had the trial court stricken the answers we are not saying we would condemn such action as an abuse of discretion. But the court did not do so. It had the witnesses before it. In circumstances such as those before us we think the trial court must be allowed some discretion, to be of course soundly and wisely exercised and subject to review. In the instant case we cannot say the court abused its discretion."

The court expounded further as to the discretion resting with the trial court in such matters and said:

"Section 1730, supra, is not by its terms mandatory. It does not say 'shall,' it says the pleading 'may' be stricken. In Frankel v. Hudson, 271 Mo. 495, 506, 196 S.W. 1121, 1124,

we said: 'Refusal of a trial court to strike out the pleading of a party refusing to testify or give his deposition * * * is to be interfered with only in a case of a clear abuse of discretion. Appellate courts seldom hold such ruling erroneous.' In Kaiser v. Gardiner, Mo.App., 211 S.W. 883, 884[5] it is said: 'While it is true the discretion of the trial court must be exercised with justice and wisdom, as affected by the facts and circumstances affecting the matter in hand, and while such discretion is open to review by an appellate court, yet the party seeking to substitute the discretion of an appellate court for that of the trial court must present a strong and clear case.' "

In our case the defendants testified rather fully at the trial respecting the subject matter of the unanswered interrogatories although relator says it was prejudiced by not having time to investigate and check the correctness of some of the answers.

In State ex rel. Jones v. Reagan et al., Mo.App., 382 S.W.2d 426, 427, the trial court entered a default judgment against the defendant Mortuary for failure to answer interrogatories and its discretionary act in so doing was approved by the appellate court. The following excerpts from the opinion reveal the facts.

" * * * on March 4, 1963, plaintiff served written interrogatories on defendant. Defendant failed to answer same within the allotted time and on April 10, plaintiff filed her motion to compel answers to the interrogatories. On April 19th, the motion was sustained and defendant was given ten additional days to answer, but again failed to do so. On May 3rd, the court entered an order striking defendant's pleadings and holding defendant in default for failure to answer the interrogatories and ordered default and inquiry against defendant.

"On May 15th, defendant filed answers to some of the interrogatories and objections to others, and on the same day, on oral motion of defendant, the trial court set aside the default and inquiry of May 3rd.

"The court further ordered defendant to answer interrogatories * * *, and to file an amended answer by May 17, 1963. Defendant failed or refused to answer said interrogatories by May 17, 1963, and on May 21st, plaintiff filed a motion asking the court to set aside its order of May 15th, which order set aside the default and inquiry previously granted. On May 22, 1963, defendant, by leave of court, filed an amended answer. On May 23, 1963, plaintiff's motion to vacate and set aside the court's order of May 15th, and to enter default and inquiry was sustained and the trial court set the date of June 6th for default and inquiry. Defendant's attorney was given proper notice of all of the dates set for hearing of the matters listed above and of the actions of the trial court, but did not appear, and gave no reason for not appearing, and for not answering the interrogatories in question.

" * * * defendant's attorney * * * was given at least four opportunities to comply with the trial court's orders directing him to answer interrogatories. Ten of the twenty interrogatories were never answered. After the trial court entered default, defendant's attorney was notified that the matter would be heard on June 6th. This notice was given on May 23rd. Even then, defendant did not appear.

"If the trial court had no power to enter a default under these circumstances, then the rule has no purpose, and the answers to interrogatories could never be compelled. Whether or not defendant had an

answer on file is not in point. Under the aggravated circumstances showing defendant's utter disregard for various orders of court and notice of motions, the trial court exercised its discretionary power to enter judgment by default for defendant's failure to answer interrogatories."

In the Reagan case the circumstances were most aggravating. Defendant refused to answer and a default was entered. The default was set aside and the defendant was given at least four opportunities to answer. It refused on all occasions to answer and failed to show up for a hearing after having been duly notified. Under these conditions the trial court exercised its discretion and entered a default judgment. It is difficult to conceive of a case in which such a summary penalty would be more justified.

█ In our case relator did not call up his motion to invoke sanctions until the date of the trial which was more than one year after the motion was filed. When counsel for defendants told counsel for relator that he was having difficulty in securing the answers he was told to "do the best you can". Aid of the court in enforcing compliance was not sought until the day of trial. And on the trial date, relator sought only the extreme sanctions of dismissing defendants' pleadings and entering a default judgment against them. Unless the court was willing to grant this harsh penalty which actually would have sounded the death knell to defendants' claims for any damages over and above the commissioners' award, relator apparently chose to go to trial. At least no continuance was requested during which time the trial court's usually effective powers of persuasion might have been invoked or at least sought in a further effort to secure compliance and answers to the interrogatories. The trial court presumably considered—(a) relator's delay until the trial date in requesting action and aid of the court in securing compliance; (b) relator's

apparent decision to either secure extreme sanctions, coupled with summary and complete relief by entry of judgment in its behalf, or go to trial, and (c) whether relator was unduly prejudiced and injured by not securing the answers prior to the trial. In any event, the court was in a position to understand the situation, had the parties before it and saw at first hand the developments of these preliminaries. In the exercise of its discretion the court denied relator's request for summary sanctions and summary judgment. In this field the court is clearly vested with wide discretion. We cannot say that in the instant case the court abused its discretion. Appellant has not presented any other assignment of error.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.