In re M_____ and M_____.

No. 8909.

Springfield Court of Appeals.

Missouri.

Oct. 7, 1969.

William A. Moon, Springfield, for appellant.

Dalton DeShazer, Joplin, for Denzil Albin, Juvenile Officer.

TITUS, Judge.

Proceeding under § 211.441 et seq.,[1] the juvenile officer of Jasper County filed a petition (§ 211.451) to terminate the parental rights of the parents of five children. Chapter One of this tragedy is chronicled as In re M_____, Mo.App., 393 S.W.2d 109, wherein, following a hearing and the entry of a decree which purported to end the rights of both parents, the cause was reversed and remanded "to the end that a guardian ad litem may be appointed [for the allegedly mentally ill adult father], both to prevent injustice to the [father] and to the end that the State may obtain a final permanent decree, if the evidence [at a new hearing] warrants it." L.c. 117. Thereafter three of the children became "adults" [§ 211.021(1)] and, subsequent to events to be retold anon, "a judgment by default" [Rule 61.01(b) (3)] was entered by the Juvenile Division of the Circuit Court of Jasper County on October 2, 1968, terminating the rights of the father to the two children who remained within the jurisdiction of the court. § 211.021(2). When his motion to set aside the judgment or for a new trial proved unfruitful, the father appealed.[2]

---

1. Unless stated otherwise, references to statutes and rules are to RSMo 1959, V.A.M.S. and to Rules of Civil Procedure, V.A.M.R.

2. The Juvenile Act, per L.1957 pp. 642–657, consisted of 43 new sections therein numbered 211.010 to 211.420, and was amended, L.1959, H.B.No.437, "by adding seven new sections [211.283 to 211.289] relating to the same subject and providing, * * * for the termination * * * of parental rights to children." The committee on legislative research (§ 3.060) renumbered and rearranged the sections as they appeared in the session acts, so that the sections contained in the Laws of 1957 are now numbered 211.011 to 211.431, and those added in 1959 are §§ 211.441 to 211.511. As numbered and arranged by the committee, references contained in the initial 43 sections make it appear that particular provisions, procedural and otherwise, apply only to §§ 211.011 to 211.431. However, we find nothing in the Laws of 1959 to justify a holding the legislature intended that the seven new sections were to be set apart from the other provisions of the Juvenile Act. Therefore, we consider §§ 211.441 to 211.511 to be interrelated with the preceding provisions of the law which, inter alia, confer upon the father in this case the right to appeal from the order adversely affecting him. Sec. 211.261; In re Burgess, Mo.App., 359 S.W.2d 484, 486–487(1–3).

Reversal of the first decree completely nullified that edict, so the case stood as if no judgment had ever been rendered and, save for the necessity of providing the father with a guardian ad litem, had the effect of returning the participants and the juvenile court to the same position they occupied before the decree was made.[3] Consequently, Chapter Two of this buskin begins in juvenile court following remand, as if nothing, or almost nothing, had previously transpired.

No hearing on the merits of the matters alleged in the juvenile officer's petition was held after the case was relodged in the juvenile court. Ergo, the transcript on this appeal consists only of the court's minutes, the "pleadings" and other documents which were filed, and the "judgment by default" entered on October 2, 1968.

■ A guardian ad litem for the father was appointed on October 28, 1965. The appointee filed his written consent, but later tendered his resignation which was accepted on February 24, 1966. Another appointment was not made until June 21, 1968. However, that appointee, the present incumbent, did not file his answer or consent to serve until October 2, 1968, which is the same day the second decree was rendered by the juvenile court.[4] During the time no person had been appointed or had consented to serve as guardian ad litem for the father, the following occurred: On March 28, 1968, the juvenile officer petitioned the court for an order requiring the father to submit to a "mental and psychiatric examination." Rule 60.-01(a). Without "notice to the person against whom the order is sought," the juvenile court on May 8, 1968, ordered the father "to submit himself to State Hospital No. 3 at Nevada, Mo. for mental examination by a psychiatrist at said hospital on or before May 31, 1968." The father did not comply, and on September 23, 1968, the juvenile officer moved the court [Rule 61.-01(b) (3)] to strike "all pleadings" of the father and enter judgment terminating his parental rights because of his failure to submit to the examination as ordered. Also on September 23, 1968, the juvenile officer's attorney wrote the court alluding to the request of the father's lawyer for "a change in the setting of the * * * case from October 2," 1968, and expressing his willingness "to postpone any hearing on the merits * * * [i]f we could have a hearing upon the motions and pleadings now on file * * * on October 2."

The October 2, 1968, judgment entered by the juvenile court reads in part as follows: "Answer and consent of guardian ad litem * * * filed with the Court. * * * Now on this day this cause comes on for further hearing, the Juvenile Officer * * * appears in person and by [his attorney]. The Father * * * appears by * * * his guardian ad litem, but fails to appear in person or by his attorney * * * although being duly notified of the setting of this cause on this date. Thereupon * * * the court sustains the Juvenile Officer's motion to strike the pleadings of the Father * * * and [to] enter a Judgment for the termination of the parental rights of the said Father. Whereupon, it is ordered and adjudged by the Court that the parental rights of the said [father] in and to the [two] minor children * * * be and they are hereby terminated."

■ The case we have is not between individuals contesting the right to custody,

3. State ex rel. Brown v. McDonnell, Mo. App., 280 S.W. 66, 69(5); 50 C.J.S. Judgments § 625, pp. 50–51; 5B C.J.S. Appeal and Error § 1950, pp. 511–514.

4. As a general rule, consent of the appointee is necessary to complete and validate the appointment of a guardian ad litem for a minor (43 C.J.S. Infants § 110(4), p. 297), and there is no reason apparent why the same rule should not apply to the appointment of a guardian ad litem for an incompetent person. See Hemphill by and through Hemphill by and through Burns v. Hemphill, Mo., 316 S.W.2d 582, 587.

but one initiated on behalf of the State as parens patriae "In the interest of" the designated minor children. § 211.091, subd. 1. Courts should be ever mindful that irrespective of the nature of the cause, the custody of a child must never be altered with any thought of meting out punishment upon a parent. P_____ D_____ v. C_____ S_____, Mo.App., 394 S.W.2d 437, 446(13). The Juvenile Act is a complete law or code within itself,[5] and a juvenile court is a tribunal strictly limited in its jurisdiction by the statutes which establish it. The awesome power vested in such a court to destroy the parent-child relationship must be exercised in accordance with the due process fixed by the law, and is legally effectual only if the specified procedures are punctiliously applied. Shepler v. Shepler, Mo.App., 348 S.W.2d 607, 610; State v. Taylor, Mo.App., 323 S.W.2d 534, 537(3, 6).

The specific mandate of the law is that "The termination of parental rights shall be made *only after a hearing*[6] before the juvenile court" (§ 211.461, subd, 1), and a juvenile court "may * * * terminate all rights of parents to a child *when it finds* that such termination is in the best interest of the child and one or more of the [statutory] conditions are found to exist." § 211.441, subd. 1. The statute "demands clear, cogent and convincing evidence of the existence of these conditions precedent." In re Taylor, Mo.

App., 419 S.W.2d 473, 476; § 211.441, subd. 1(2). Findings predicated upon facts which prove "that one or more of the conditions set out in section 211.441 exist and that termination of the parental rights of the child *is in the best interest of the child*" (§ 211.501, subd. 1) are, of course, possible only following an evidentiary hearing—such a determination cannot be made through the simple, harsh process of defaulting a parent under Rule 61.01(b) (3).[7] The hearing is a prerequisite which cannot be avoided, and jurisdiction of the juvenile court to end parental rights is conferred only after a hearing as required by § 211.461, subd. 1. Cf. State ex rel. White v. Swink, 241 Mo.App. 1048, 1055, 256 S.W.2d 825, 831.

Whether the rules of discovery are applicable to juvenile cases in general and, if so, whether Rule 60.01(a), quoted marginally,[8] would apply to the situation at hand in particular, are questions we purposely eschew. But were we to assume (although we do not decide) that the avenues of discovery were open to the juvenile officer, that because of § 211.491 the mental condition of the father "is in controversy," and that he was "a party" to the action as contemplated by Rule 60.01(a), we remain confronted with the fact that except for § 211.481 (demand for jury trial) there is no provision in any part of the Juvenile Act which requires the father to file any pleading in the case. State v.

---

5. State v. Harold, 364 Mo. 1052, 1055, 271 S.W.2d 527, 529; State v. Heath, 352 Mo. 1147, 1151, 181 S.W.2d 517, 519(4); State ex rel. Shartel v. Trimble, 333 Mo. 888, 891, 63 S.W.2d 37, 38; In Interest of R_____, Mo.App., 362 S.W.2d 642, 643(2); Mashak v. Poelker, Mo.App., 356 S.W.2d 713, 718; In Re C_____, Mo. App., 314 S.W.2d 756, 759(3).

6. All emphasis herein is ours.

7. Rule 61.01(b), as of interest here, states: "If any party * * * refuses to obey * * * an order made under Rule 60, requiring him to submit to a physical or mental examination, the court may make * * * (3) An order striking out

pleadings * * * or rendering a judgment by default against the disobedient party."

8. Rule 60.01(a): "In an action in which the mental * * * condition * * * of a party * * * is in controversy, the court * * * may order the party to submit to a * * * mental * * * examination by a physician * * *. The order may be made only on motion for good cause shown and upon notice to the person against whom the order is sought and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

Campbell, 325 Mo. 561, 566, 32 S.W.2d 69, 70(3); In re Von Talge, Mo.App., 67 S. W.2d 999, 1002(3). Therefore, the punitive procedure taken under Rule 61.01(b) (3) amounted, in this instance, to no more than the striking of surplusage and did not obviate the jurisdictional requirement of § 211.461, subd. 1 that "termination of parental rights shall be made only after a hearing."

 Jurisdiction to adjudicate encompasses not only jurisdiction of the subject matter and of the parties, but also jurisdiction to render a particular judgment in a particular case. State ex rel. Industrial Properties, Inc. v. Weinstein, Mo.App., 306 S.W.2d 634, 636(3). In the instant matter, the juvenile court had jurisdiction of the parties and of the subject matter, but until there had been a hearing and satisfaction of the other jurisdictional requirements imposed by the Juvenile Act, it did not have jurisdiction to enter a judgment terminating parental rights. Cf. Healer v. Kansas City Public Service Co., Mo., 251 S.W.2d 66, 70(8).

 We are also concerned upon this appeal with the fact that the events which prompted the juvenile court to terminate the father's parental rights "by default" all occurred at a time when no guardian ad litem had been appointed for him. The first judgment in this cause was reversed because the father did not have "his day in court * * * for want of a guardian ad litem." In re M———, supra, 393 S.W.2d at 115. The same situation existed when the motion and order for a mental examination of the father were made. It has been repeatedly stated that the appointment of a guardian ad litem for an incompetent is not a bare technicality, that such a guardian is not a mere figurehead, and that the office involves more than perfunctory and shadowy duties. A guardian ad litem is required to take all steps reasonably necessary to protect and promote the interests of his ward in the litigation.[9] Moreover, it is the duty of the court "*at all stages*" to see that the interests of the incompetent are fully protected (Fiorella v. Fiorella, 241 Mo. App. 180, 187, 240 S.W.2d 147, 152), and the obligations of a guardian ad litem "extend to all matters in the particular litigation affecting the interest of his ward, *in every stage of the action.*" 44 C.J.S. Insane Persons § 144a., at p. 310.

 Appoinment of the incumbent guardian ad litem was not made until 44 days after the order for a mental examination had been entered; the guardian's consent and answer were not filed until the day the judgment by default was made and at a time when the father had been in arrears as to the order for a period of four months. The mere appointment and filing of the consent and answer, and nothing more, as indicated by the record, did not aid the father in what proved to be his time of greatest need, and simply served as technical features to facilitate entry of the judgment. Rule 61.01(b) is not by its terms mandatory, but discretionary, for it provides that as a consequence of a party's refusal to obey a discovery order "the court *may*" (not "shall") make such orders as are just, including the striking of his pleadings or the rendering of a judgment against him by default. Whether the court makes or refuses to make such an order under the rules is within the discretion of the trial court in the first instance. Nevertheless, that discretion must be applied with wisdom and justice, and the propriety of the discretion so exercised is open to review upon appeal. Graveman v. Huncker, 345 Mo. 1207, 1216, 139 S.W.2d 494, 499; State ex rel. N. W. Electric Power Coop-

9. Hemphill by and through Burns v. Hemphill, supra, 316 S.W.2d at 587(12); Kennard v. Wiggins, 349 Mo. 283, 297, 160 S.W.2d 706, 712(7-9); Spotts v. Spotts, 331 Mo. 917, 931, 55 S.W.2d 977, 983(11), 87 A.L.R. 660; In re M———, supra, 393 S.W.2d at 115(7); In re G———, Mo.App., 389 S.W.2d 63, 66(6); Niedergerke v. Niedergerke, Mo. App., 271 S.W.2d 204, 207(1).

erative, Inc. v. Buckstead, Mo.App., 399 S. W.2d 622, 624–625(2, 3). Therefore, even if (contrary to § 211.461, subd. 1 which permits termination of parental rights only after a hearing) we assume arguendo the juvenile court, under proper circumstances, could have lawfully defaulted the father for failure to submit himself to a mental examination, we would have no hesitancy in holding that the default judgment was unduly harsh and constituted an abuse of discretion by the court. The defaulting of a party is drastic punishment and should not be invoked save in those cases where the actions of the party show a deliberate and contumacious disregard for the authority of the court. 27 C.J.S. Dismissal and Nonsuit § 59 at p. 407. The disobeyed order, which constituted the sole basis for entry of the default judgment, was directed to an incompetent person who had no guardian ad litem; the failure to comply occurred when the incompetent was without the advice and protection of a guardian. We do not intend to imply that an incompetent in every instance cannot be guilty of and be held accountable for insubordinate conduct, but the facts peculiar to this case constitute extenuating circumstances which must be given due consideration, for if the father suffered the mental disabilities attributed to him by the juvenile officer, a court would not be justified in summarily defaulting him for failure to comply with an order relating to discovery, especially when that order is made and the noncompliance occurs at a time when the father is not represented by a guardian ad litem. Even without the requirement of the Juvenile Act for a hearing, the administration of justice, particularly where the interests of minor children are involved, would still require that so far as reasonably may be done in accordance with orderly procedure, cases should be decided on their merits after a full hearing. Cf. Venker v. Hyler, Mo., 352 S.W.2d 590, 595–596(3–4).

This cause has consumed an unconscionable amount of time, and to the end that this litigation hopefully may reach a prompt, just and legal conclusion, we do not believe it amiss to call the attention of the juvenile court to the fact that its last decree made no determination affecting the mother's parental rights (§ 211.501), and, contrary to § 211.511, did not undertake a recitation of "the jurisdictional facts."

For the reasons stated, the judgment of the juvenile court is reversed and the cause is remanded for a hearing and other proceedings in accordance with the law and the views herein expressed.

HOGAN, P. J., and STONE, J., concur.