STATE of Missouri, ex rel., Luis H. SCHWARZ, M.D., and Deaconess Hospital, Relators,

v.

Honorable Brendan RYAN, Circuit Judge, St. Louis City, Respondent.

No. 54130.

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 16, 1988.

Kenneth W. Bean, Keven P. Krueger, St. Louis, Kemper R. Coffelt, Clayton, for relators.

Michael W. Flynn, Eugene K. Buckley, Mark H. Neill, Elliott I. Goldberger, St. Louis, for respondent.

SATZ, Judge.

This is an action in prohibition. The respondent circuit judge has ordered relators, Deaconess Hospital (Deaconess) and Luis Schwarz, M.D. (Schwarz), to produce certain medical records. Relators seek our writ to prohibit respondent from enforcing his order. We have issued our preliminary writ and now make it permanent.

Relators, Deaconess and Schwarz, are defendants in the underlying civil action. Plaintiffs in that action are Donna and Austin Munson (Munsons), the mother and father of Monica Munson (Monica), now deceased. The Munsons sued Deaconess, Schwarz, a Randy Resnick (Resnick) and Resnick's mother in a multiple count petition for the wrongful death of Monica. Resnick allegedly stabbed Monica to death, after he was released from Deaconess Hospital.

In their petition in the underlying action, the Munsons allege that Deaconess and Schwarz negligently "failed to have Resnick involuntarily committed," "failed to keep Resnick confined to a locked psychiatric ward" and "caused, suffered and permitted" Resnick "to leave [or] be released" from Deaconess. For their count against Resnick, the Munson's allege he "intentionally" stabbed Monica thirty times, causing her death. The count against Resnick's mother was dismissed.

The Munsons also petitioned the court to appoint Resnick's mother as "next friend" for Resnick. This motion was granted. Subsequently, the Munsons moved the court to set aside this appointment and to appoint an attorney, Mark Neill (Neill), as Resnick's next friend. This motion was also granted.

The Munsons then requested Schwarz to produce "any and all medical and hospital records ... concerning ... Resnick" and requested Deaconess to produce Resnick's medical and hospital records "from January 1, 1978 to the present." Schwarz and Deaconess objected to these requests. Respondent overruled their objections and ordered the records produced. The application for this writ followed.

At the outset, relators raise a procedural issue. On or about the same day Deaconess and Schwarz applied for the writ, Neill, Resnick's next friend, filed a Motion for a Protective Order in respondent's court.[1] Neill requested that access to the records be limited to plaintiffs' attorney and their expert witnesses, and that "all records, reports, and medical information concerning ... Resnick, submitted as discovery in this [action] be sealed and not opened to the public." Respondent granted this Motion one day after our preliminary writ had issued.

Based on this procedural record, Deaconess and Schwarz contend respondent's protective order is void because it was granted after our preliminary writ had issued, and, since the protective order is void, the granting of it and its contents should have no legal effect on our consideration of the present writ. We disagree.

■ The record does show respondent granted the protective order one day after we issued our preliminary writ. The record, however, does not show when the preliminary writ was served on respondent. More important, our preliminary writ did not prohibit respondent from all action concerning the medical records in question. Consequently, respondent had the authority to rule upon the Motion for a Protective Order.

In the action below, Deaconess and Schwarz each asserted Resnick's doctor-patient privilege as the grounds for their objections to the production of the medical records. Respondent overruled their objec-

---

1. The motion is signed by Neill as "Attorney for Defendant ... Resnick." There is nothing inherently improper, however, in a guardian *ad* *litem*, who is an attorney, also acting as his ward's counsel. *Ragan v. Looney*, 377 S.W.2d 273, 276 (Mo.1964).

tions in two separate orders. In his order overruling Schwarz's objection, respondent states:

> All parties present through counsel. [Defendant] Resnick's appointed counsel made no argument with respect to such objection.... Objection overruled due to lack of objection given by patient.

We assume respondent overruled Deaconess's objection on the same ground. Before us, counsel for respondent characterizes this ground as an implied waiver, and, in opposing the issuing of our writ, he argues that Neill impliedly waived Resnick's doctor-patient privilege. Neill, an essential character in this drama, has not graced our stage. Nonetheless, on the record before us, we find Neill had no right to waive Resnick's privilege, either expressly or impliedly.

▉ In a pristine sense, the function and powers of a "next friend" and a "guardian *ad litem*" are different. *See e.g. Tracy v. Martin*, 363 Mo. 108, 249 S.W.2d 321, 323 (1952). If nothing else, the "next friend" normally prosecutes actions and a "guardian *ad litem*" defends actions on behalf of a ward of the court. Nonetheless, the "next friend" and a "guardian *ad litem*" are like officers of the court, and their rights and duties are basically the same. *See e.g. Crawford v. Amusement Syndicate Co.*, 37 S.W.2d 581,584 (Mo.1931). Although Neill was appointed "next friend," he is defending Resnick. Thus, he is acting as a "guardian *ad litem*," and we treat him as such.

▉ An avowed purpose of appointing a special guardian is to protect the ward's interest. Thus, a guardian *ad litem* has the duty to "take all steps reasonably necessary to protect and promote the interests of his ward in the litigation." *Hemphill v. Hemphill*, 316 S.W.2d 582, 587 (Mo.1958). He "may not prejudice" any substantial rights of his ward. *Schumer v. City of Perryville, Mo.*, 667 S.W.2d 414, 418 (Mo. banc 1984). He may waive only those minor matters which expedite the trial and do not endanger his ward's position. "He cannot admit or waive anything which goes to sustain the claim of the adverse party."

*Tracy v. Martin, supra,* 249 S.W.2d at 323. More important, he can make no major decision affecting a substantial right of his ward without obtaining court approval, by showing the court the decision to be made would be in the ward's best interests. *See e.g. Hemphill v. Hemphill, supra; Tracy v. Martin, supra; Spotts v. Spotts,* 331 Mo. 917, 55 S.W.2d 977, 983 (1932); *Schuler v. Schuler,* 290 S.W.2d 192, 199–200 (Mo.App.1956).

As noted, counsel for respondent argues that Neill impliedly waived Resnick's doctor-patient privilege. Implicit in Neill's Motion for Protective Order, counsel argues, is the unstated premise that Neill has no objection to the production of the medical records with limited access, and, therefore, Neill impliedly agrees that the medical records should be produced.

▉ We need not and do not determine whether Neill's conduct would constitute an implied waiver, i.e. a clear, unequivocal and, thus, inferentially, intentional relinquishment of Resnick's doctor-patient privilege. *E.g. State ex rel. Gonzenbach v. Eberwein,* 655 S.W.2d 794, 796 (Mo.App. 1983). Even if Neill's conduct would constitute a waiver, Neill, as "next friend," had no right to waive the privilege in the present action, without proper approval of the court.

Admittedly, black letter law states that a guardian *ad litem* or his counsel has the authority to waive the doctor-patient privilege on behalf of his ward. *See* 81 Am. Jur.2d *Witnesses* § 264 (1976); 44 A.L.R.3d 24, § 5[c] (1972). The cases cited to support that statement are distinguishable from the present case.

Here, Neill apparently filed his Motion for Protective Order after respondent had granted Neill's own request to have Deaconess produce its records for Neill's personal use. We "presume" Neill studied these records before he filed his Motion for Protective Order. Arguably, Neill found the contents of those records provided a defense to plaintiffs' action and, therefore, was willing to share that information with plaintiffs and their experts. None of this

appears, however, as expressed fact in the record before us.

More important, the parties acknowledge that Resnick has been charged with first degree murder of Monica in an action now pending in St. Louis County Circuit Court. From this acknowledgment and the context in which it is made, we conclude the record of this criminal action was properly made part of the record before respondent. In the criminal action, Resnick was declared mentally unfit to stand trial, and, according to the parties, he is currently confined in the Missouri State Mental Hospital. The prosecutor, in that action, requested that court to order a subpoena duces tecum for the production of all of Schwarz's records concerning the diagnosis and treatment of Resnick. The prosecutor subsequently withdrew his motion. There is no showing, however, that the prosecutor is not still waiting in the wings and will not attempt to obtain these records again, particularly, if the same records are produced for plaintiffs here and their experts. Whether the prosecutor's request would then be granted, we cannot determine on the record before us.

■ Nor do we find it necessary to detail the various scenarios under which those records would adversely affect and prejudice Resnick in the criminal action against him. To do so would turn Neill's duty to Resnick on its head. It is Neill's duty and, thus, his burden to show that production of Resnick's medical records would be in Resnick's best interests; and, although Neill has been appointed guardian *ad litem* in the underlying civil action, neither he nor, in turn, the respondent may discharge their respective duties to Resnick by focusing solely on the civil action.

■ As the appointing court, respondent has a duty to see the interests of Resnick, an alleged incompetent, are fully protected. *In Re M——*, 446 S.W.2d 508, 513 (Mo.App.1969). To fulfill his duty, respondent must not simply appoint a next friend or guardian *ad litem* for Resnick, respondent must also see that his appointee properly protects Resnick's interests. *E.g., Spotts v. Spotts, supra,* 55 S.W.2d at 983.

By appointing Neill as next friend, respondent assumes the ultimate responsibility that determinations made by Neill on behalf of Resnick are in Resnick's best interests. This showing has not been made.

Interestingly enough, relators have filed with us an exhibit which purports to be the affidavit of Resnick's counsel in the criminal action, a public defender. This affidavit is a combination of asserted fact and legal conclusions. In it, the public defender asserts he believes the production of the medical records in issue, even as protected, "would be detrimental to ... Resnick's criminal defense and would violate his rights against self-incrimination." Apparently, this affidavit was not before respondent, nor does it appear that the public defender requested to intervene in the underlying action or that he was called as a witness to testify. Thus, we do not rely on this affidavit to reach our decision.

Nonetheless, for the other reasons stated, we find it is Neill's duty to show that production of Resnick's medical records is in Resnick's best interests and it is Respondent's duty to deny their production unless so convinced. We may, at times, indulge in the presumption that a guardian *ad litem* has properly performed his duties. *In Re Adoption of P.J.K.*, 359 S.W.2d 360, 367–368 (Mo.App.1962). We cannot do so here.

Disposing of this issue disposes of this matter, and, thus, we do not address the other issues raised by the parties.

Our preliminary writ is made permanent.


SMITH, P.J., and STEPHAN, J., concur.