Mary Bruce MIKESIC, as the Wife of Anthony Mikesic, an Incompetent Individual, and Mary Bruce Mikesic, Individually, Appellants,

v.

TRINITY LUTHERAN HOSPITAL and Thomas Coppinger, M.D., George Parkins, M.D., Milagros Tiojanco, M.D., Catherine Park, C.R.N.A., Robert Durie, M.D. and Everett Murphy, M.D., Respondents.

No. WD 54239.

Missouri Court of Appeals, Western District.

Sept. 22, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 27, 1998.

Application for Transfer Denied Dec. 22, 1998.

■

Sylvester James, Jr., Nancy E. Kenner, Brian C. Fries, Kenner & James, Kansas City, for appellants.

Roger Paul Wright, Shughart Thomson & Kilroy, Kansas City, Timothy M. Aylward, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, J. Michael Shaffer, Shaffer Lombardo Shurin, Kansas City, for respondents.

Before ELLIS, P.J., and EDWIN H. SMITH and RIEDERER, JJ.

ELLIS, Presiding Judge.

Mary Bruce Mikesic, as next of friend for her husband, Anthony Mikesic, appeals from the dismissal of a medical malpractice action she filed on behalf of Mr. Mikesic in the Circuit Court of Jackson County.

On July 1, 1994, Mr. Mikesic, a Kansas resident, went to Trinity Lutheran Hospital for knee surgery. During surgery, Mr. Mikesic suffered a cardiac arrest and was left severely and permanently brain damaged. Mr. Mikesic remained at Trinity Lutheran Hospital until August 11, 1994, when he was moved to a nursing home. The damage from his injuries left Mr. Mikesic incompetent and unable to understand or sign papers. On September 15, 1995, Mrs. Mikesic was appointed guardian and conservator of Mr. Mikesic by the district court of Wyandotte County, Kansas.

On June 28, 1996, Mrs. Mikesic filed a *pro se* petition in the Circuit Court of Jackson County seeking to be appointed the next friend of Mr. Mikesic, alleging that Mr. Mikesic was "an incompetent individual whose brain injuries render him incapable of asserting his legal rights; and that Anthony Mikesic, through Mary Mikesic desires to assert a claim for damages against the above named defendants." Simultaneously, Mrs. Mikesic also filed a *pro se* petition alleging negligence on the part of respondents Dr. Thomas Coppinger, Dr. George Parkins, Dr. Milagros Tiojanco, Dr. Robert Durie, Dr. Everett Murphy, nurse Catherine Park, and Trinity Lutheran Hospital. The caption of the petition listed the plaintiffs as "Mary Bruce Mikesic, as the wife of Anthony Mikesic, an incompetent individual, and Mary Bruce Mikesic, individually." The body of the petition stated, "Comes now Mary Bruce Mikesic, wife of Anthony Mikesic, an incompetent individual, and duly appointed next friend, and for her cause of action against defendants states and alleges as follows: 1. That Anthony Mikesic is an incompetent individual and brings this suit through his duly-appointed, qualified and acting next friend, Mary Bruce Mikesic, duly appointed to act as such by the Circuit Court of Jackson County, Missouri . . ."

For reasons not fully explained by the record, the circuit court did not act on the petition for appointment of next friend until August 1, 1996, when an order appointing Mrs. Mikesic as next friend for Mr. Mikesic was entered. As a result of her filing of the petition and her appointment as next friend,

Mrs. Mikesic was able to obtain counsel, and on August 2, counsel entered an appearance.

On August 15, 1996, Respondents began to file answers to Mrs. Mikesic's petition. On August 29, 1996, Respondents began to file motions to dismiss, asserting that the statute of limitations on Mr. Mikesic's cause of action expired on July 1, 1996, and claiming that because Mrs. Mikesic was not the duly appointed next friend of Mr. Mikesic at the time the petition was purportedly filed and as a non-lawyer she could not file a petition on his behalf, no action was brought prior to expiration of the statute of limitations. On December 13, 1996, a hearing was held on the motions to dismiss. On December 21, 1996, Appellant requested leave to file an amended petition. On February 2, 1997, the circuit court denied Respondents' motions to dismiss and granted leave to file an amended petition. Appellant's amended petition was filed later that day. That petition was signed and filed by the Mikesics' attorney, and read:

Comes now Mary Bruce Mikesic, wife of Anthony Mikesic, an incompetent individual, and duly-appointed guardian, conservator, and next friend, and for her cause of action against defendants states and alleges as follows: 1. That Anthony Mikesic is an incompetent individual and brings this suit through his duly-appointed, qualified and acting guardian, conservator, and next friend, Mary Bruce Mikesic.

On February 13, 1997, Respondents filed a motion to dismiss those claims brought on behalf of Mr. Mikesic in the amended petition again asserting that Mrs. Mikesic was not appointed next friend at the time the original petition was filed and that Mrs. Mikesic could not have properly filed the original petition because she was not an attorney, and, as such, the cause of action alleged in the amended petition was barred by the statute of limitations. On April 6, 1997, the circuit court entered an order dismissing with prejudice those claims in the amended petition relating to Mr. Mikesic and entering judgment on behalf of Respondents on those claims.

■ Appellant brings five points on appeal. Ultimately, the issue before this court is whether Mr. Mikesic, an incompetent indi-

vidual, can pursue his cause of action for medical malpractice, which was admittedly filed before expiration of the statute of limitations, notwithstanding the fact that the filing occurred before Mrs. Mikesic was formally appointed Mr. Mikesic's next friend, and was made by Mrs. Mikesic *pro se.*

■ "When reviewing the grant of a motion to dismiss a petition, all facts alleged in the petition are deemed true and the plaintiff is given the benefit of every reasonable intendment." *Magee v. Blue Ridge Professional Bldg.,* 821 S.W.2d 839, 842 (Mo. banc 1991). We look only to the pleadings to determine whether the petition invokes substantive principles of law. *Jordan v. Willens,* 937 S.W.2d 291, 293 (Mo.App. W.D. 1996).

Section 516.105 [1] provides that any action against a health care provider for malpractice or negligence must be brought within two years from the date of the negligent act. § 516.105. Accordingly, it was incumbent on Mr. Mikesic to file his medical malpractice claim within two years of the claimed acts of negligence.[2] The petition filed by Mrs. Mikesic fell within that time period. However, Respondents argue that because Mrs. Mikesic was not Mr. Mikesic's next friend at the time she filed the petition, she lacked standing to bring an action on his behalf,[3] and furthermore, at the time she was named next friend, the statute of limitations had run.

■ We initially observe that certain Respondents focus much attention on the insufficiencies of the caption of the original petition, which listed the plaintiffs as "Mary Bruce Mikesic, as the wife of Anthony Mikesic, an incompetent individual, and Mary Bruce Mikesic, individually." "Generally the body of the pleading, not the caption, determines the parties necessary to the prosecution of the action." *Watson v. Watson,* 562 S.W.2d 329, 332 n. 2 (Mo. banc 1978), [and] "technical defects in the caption and summons are correctable by appropriate amendment." *Id.* at 333. Such an amendment was made in this case. Accordingly, we address the sufficiency of the petition as a whole.

■ Rule 52.02(k) provides:

Whenever it shall be suggested or affirmatively appear to the court that any person not having a duly appointed guardian is incapable by reason of mental or physical infirmity of instituting suit or of properly caring for the person's own interests in any litigation brought by or against such person, the court shall inquire into the person's mental or physical condition for the purpose of the particular litigation and shall hear and determine such issue. If it is found to be proper for the protection of the person, the court may appoint a next friend or guardian ad litem for said person for the purpose of the particular litigation.

Respondents correctly note that, when the trial court entered its order making Mrs. Mikesic next friend on August 1, 1996, over two years had passed since Mr. Mikesic's surgery. The question, then, is whether the appointment of Mrs. Mikesic as Mr. Mikesic's next friend on August 1 [st] relates back to the filing of the original petition on June 28, 1996.[4]

1. All statutory references are to RSMo 1994 unless otherwise noted.

2. The provisions of § 516.170, which tolls the statute of limitations for individuals who are mentally incapacitated, exempts from its tolling provisions actions for medical malpractice. *Wheeler v. Briggs,* 941 S.W.2d 512, 514 (Mo. banc 1997).

3. "Standing to sue is an interest in the subject of the suit, which if valid, gives that person a right to relief." *Earls v. King,* 785 S.W.2d 741, 743 (Mo.App. S.D.1990).

4. Mrs. Mikesic did not purport to file the original petition in her capacity as a foreign guardian and conservator for Mr. Mikesic. Generally, a non-domiciliary foreign conservator may not file suit in Missouri in his or her representative capacity, absent statutory authority to do so. *Matter of Estate of Widmeyer,* 741 S.W.2d 758, 760 (Mo. App. S.D.1987); *Turner v. Turner,* 637 S.W.2d 764, 767 (Mo.App. S.D.1982). *See also* §§ 475.335–337. The intent of Rule 52.02(k) is to provide for someone who can protect the rights of an incompetent. Clearly, the language relating to a "duly appointed guardian" as used in Rule 52.02(k) means a duly appointed guardian legally capable of acting for the incompetent ward in the pending proceeding. Therefore, the fact that Mrs. Mikesic had been appointed guardian and conservator for Mr. Mikesic in Kansas did not preclude her from being appointed next friend.

The provisions of Rule 52.02(k) are mandatory. That rule places a burden on the court to inquire as to whether the individual is capable of *"instituting"* litigation on his or her behalf where it is *"suggested"* that the individual is incapable of protecting his or her own interests. Such suggestions were made in the case at bar in the petition for the appointment of a next friend and in the petition for damages, both of which were filed on June 28, 1996. At that time, the statute of limitations had not run, and Mr. Mikesic still had an interest in a cause of action against Respondents. From the dates noted in the petition, it was also clear that the statute of limitations would run on July 1, 1996. As a result of its eventual inquiry, the circuit court implicitly found that Mr. Mikesic was incapable of instituting suit or protecting his own interests when it appointed a next friend on August 1, 1996.

■ "It is the duty of the court *'at all stages'* to see that the interests of the incompetent are fully protected." (emphasis in the original) *In re M____,* 446 S.W.2d 508, 513 (Mo.App. S.D.1969) (quoting *Fiorella v. Fiorella,* 241 Mo.App. 180, 240 S.W.2d 147, 152 (Mo.App.1951)). In this case, for Rule 52.02(k) and its mandate that the trial court fully protect the interests of incompetent persons at all stages to have any meaningful effect in protecting the interests of Mr. Mikesic, the appointment must relate back to the time the petition for the appointment of a next friend was filed, the point at which it was "suggested" to the court that Mr. Mikesic was incapable of instituting suit or properly caring for his own interests.

This case is similar to the situation in *Rotella v. Joseph,* 615 S.W.2d 616, 623 (Mo. App. S.D.1981).[5] In that case, a wrongful death claim arose from the death of Deborah Evans, a Connecticut resident who died in a car wreck in Missouri. The Connecticut administrator of the decedent's estate timely filed an action on June 17, 1978, in the circuit court of Douglas County alleging negligence on the part of both drivers involved in the accident. "The petition also alleged that Marissa Joyleen Evans, who was born on April 23, 1977, 'was the only child and survivor of the decedent' and that 'as result of the death of Deborah Evans, this administrator brings action for the wrongful death on behalf of her sole survivor, Marissa Joyleen Evans and prays for damages as provided by law.'" *Id.* at 617. In November 1979, the defendants filed motions for summary judgment which were granted by the trial court on the grounds that the foreign administrator lacked standing to institute suit on behalf of the surviving child and the two year statute of limitations had subsequently run.

The Southern District reversed the trial court's judgment. The court noted that several Missouri cases had addressed situations under the wrongful death statute of limitations where the original plaintiff was not the correct one as prescribed by statute and an attempt was made after the running of the statute of limitations to substitute the correct plaintiff for the incorrect plaintiff. *Id.* at 619. The court further noted that in some of those cases the attempt was successful, and the substitution related back to the filing of the original petition rendering the action timely, while in other cases such an attempt was unsuccessful. *Id.* at 619–20.

The court determined that the correct question was not whether the Connecticut administrator was a stranger to the action, but was rather whether the action was actually filed by the administrator, as the caption would indicate, or in legal contemplation, filed by Marissa, as the body of the petition would indicate. *Id.* at 620. In finding that the factual situation mandated the relating back of the amended petition, the court noted that (1) the original petition was filed at a time when the action was vested in the little girl, (2) the defendants were served with the petition, and (3) while the petition named the Connecticut administrator as the plaintiff, the body of the complaint set forth that Deborah Evans left Marissa as "her sole

---

5. Respondents' reliance on *Smith v. Tang,* 926 S.W.2d 716 (Mo.App. E.D.1996), is misplaced. *Tang* involved the personal representative of a decedent's estate rather than a next friend or guardian ad litem, and the plaintiff did not file her application to be named personal representative until well after she filed her original petition and the applicable statute of limitations had run. *Id.* at 718.

survivor" and that the action was being brought on behalf of Marissa. Ultimately, the court held:

> It is a simple matter to place Marissa's name in the caption of the petition as plaintiff. Although regular procedure requires the appointment of a next friend, Rule 52.02, subsection (m) of that rule provides, "Failure to appoint a next friend ... for a minor ... shall not invalidate the proceedings if the court finds that the interests of the minor ... were adequately protected."

\* \* \*

> The holding here is that § 537.080 (and § 537.100) received full compliance because the body of the petition reflected that the action was being brought on behalf of Marissa and the petition was filed at a time when the claim was vested in Marissa. It follows that ... the trial court erred in sustaining the defendant's motion for summary judgment.

*Id.* at 623. It should be noted that the court reached this decision despite the fact that the record did not reflect whether the plaintiff ever sought to amend the original petition.

In the case at bar, the petition filed by the Kansas Conservator, Mrs. Mikesic, contained all of the elements found in the petition filed by the Connecticut administrator in *Rotella.* Like *Rotella,* (1) the original petition was filed at a time when the action was vested in Mr. Mikesic, (2) the defendants were served with the petition, and (3) the body of the petition sets forth that "Anthony Mikesic is an incompetent individual and brings this suit through his duly-appointed, qualified and acting next friend, Mary Bruce Mikesic ..." The petition clearly sets out that Mr. Mikesic is an incompetent individual and that relief is being sought on his behalf. The defendants were therefore clearly advised by the original complaint that Mr. Mikesic was seeking damages for medical malpractice, and the defendants were in no way prejudiced by Mrs. Mikesic's failure to file the action in the proper capacity. *See Rotella,* 615 S.W.2d at

622 (quoting with approval *Crowder v. Gordons Transports, Inc.,* 387 F.2d 413, 419 (8th Cir.1967)). Moreover, in this case, unlike *Rotella,* an amended petition was filed with the permission of the court "for good cause shown" which corrected the alleged errors. *Watson v. Watson,* 562 S.W.2d 329, 332–33 (Mo. banc 1978).

■ Statutes of limitation were never intended to be used as swords. Rather, they are shields, primarily designed to assure fairness to defendants by prohibiting stale claims, those where evidence may no longer be in existence and witnesses are harder to find, all of which tends to undermine the truth-finding process. *Reasons v. Union Pac. R. Co.,* 886 S.W.2d 104, 108 (Mo.App. E.D.1994). However, "where a plaintiff pleads a specific set of facts in trying to enforce a claim within the statutory period, and defendant had notice of such a claim from the date of its filing, the reasons for statute of limitations cease to exist...." *Estate of Jones v. Planters Grain & Seed Co.,* 723 S.W.2d 91, 92 (Mo.App. S.D.1987). Such is the case here with relation back to the filing of Mr. Mikesic's original petition. Respondents suffer no prejudice as they "knew from the beginning what the claim was, and had the opportunity to timely investigate it and prepare [their] defenses." *Id.* Moreover, to rule otherwise would leave an incompetent individual at the mercy of the trial court's workload, effectively shortening the statutory period in which an incompetent individual could file a medical malpractice cause of action.

For the reasons discussed *supra,* as well as those outlined in *Rotella,* we hold that Mrs. Mikesic's appointment as Mr. Mikesic's next friend, with standing to bring suit on his behalf, relates back to the filing of the petition for damages on June 28, 1996.

■ We must next consider whether Mrs. Mikesic's actions in filing the petition *pro se* constituted the unauthorized practice of law and whether those actions served to invalidate Mr. Mikesic's claim for damages.[6] Re-

6. We initially note that even if Mrs. Mikesic's filing of her "Petition for Appointment of Next Friend" and "Petition for Damages" on behalf of

Mr. Mikesic constituted the unauthorized practice of law, it would not invalidate her appointment as next friend. All that is necessary to vest

spondents contend that Mrs. Mikesic was not a licensed attorney and, therefore, should not have been allowed to file a petition for damages on behalf of Mr. Mikesic. Respondents claim that this constituted the unauthorized practice of law and mandated the dismissal of the petition. Under *Risbeck v. Bond*, 885 S.W.2d 749, 750 (Mo.App. S.D.1994), a "natural person, not a licensed attorney at law, may represent themselves in court, but not others." In *Risbeck*, the court affirmed the dismissal of a petition filed on behalf of the intended plaintiff by an individual, who was not an attorney at law but who possessed the intended plaintiff's durable power of attorney. *Id.* Respondents contend that like the individual with the power of attorney in *Risbeck*, Mrs. Mikesic was a natural person who could not represent Mr. Mikesic in his action against respondents.

■ Even assuming, *arguendo*, that Mrs. Mikesic's filing of the original petition constituted the unauthorized practice of law to the extent she was representing her husband, the dismissal of Mr. Mikesic's claims in the amended petition is not mandated by *Risbeck*. Unlike an individual acting under a durable power of attorney, next friends and *guardians ad litem* are treated like officers of the court with prescribed rights and duties. *State ex rel. Schwarz v. Ryan*, 754 S.W.2d 949, 951 (Mo.App. E.D.1988). A next friend may not prejudice the substantial rights of the litigant he or she has been assigned to protect, *Schumer v. City of Perryville*, 667 S.W.2d 414, 418 (Mo. banc 1984), and the appointing court has a duty to see the interests of an alleged incompetent are fully protected at all stages of the proceedings. *State ex rel. Schwarz*, 754 S.W.2d at 952 (citing *In re M___*, 446 S.W.2d 508, 513 (Mo.App.1969)). To fulfill this duty, the court must not only appoint a next friend for an incompetent person, but must also see that its appointee properly protects the incompetent's interests. *Id.* By appointing a next friend, the trial court assumes the ultimate responsibility that determinations made by the next friend on behalf of the incompetent person are in the incompetent's best interests. *Id.*

Mrs. Mikesic's intent to file an action on behalf of her husband without the benefit of counsel was apparent from the two petitions she filed with the court on June 28, 1996. If her actions stood to substantially prejudice Mr. Mikesic, it was the duty of the trial court to prevent her from doing so, even if she acted unintentionally. *Everhart v. Crabb*, 775 S.W.2d 335, 338 (Mo.App. W.D.1989).[7]

the trial court with the responsibility to act under Rule 52.02(k) is a "suggestion" that Mr. Mikesic lacks the capacity to institute suit. That suggestion was clearly accomplished through the filing of the documents, even if they were not proper legal documents, and they informed the court of the need to determine the issue. Accordingly, Mrs. Mikesic's status as a non-lawyer has no bearing on her appointment as next friend.

**7.** In *Everhart v. Crabb*, 775 S.W.2d 335 (Mo.App. W.D.1989), Linda Everhart was named next friend of her son, Shane Everhart, a minor. Shane had been one of four individuals in a car owned by Rick Crabb that had Kimberly Westmoreland behind the wheel when the car drove off a road in the Ozarks. As a result of the automobile accident which formed the basis for Shane's cause of action, Shane was unable to walk, talk, or function. Mrs. Everhart was named Shane's next friend. Without obtaining a lawyer, Mrs. Everhart agreed to accept a policy limit settlement from Crabb's insurance company and to sign a general release which released Westmoreland, Crabb, the insurance company, and "all other persons, firms or corporations liable or who might be claimed to be liable in any manner, from any and all claims, demands, actions, causes of action or suits of any kind or nature whatsoever both known and unknown." *Id.* at 336. At the settlement hearing, the testimony indicated that Westmoreland was driving, no other automobile was involved, and there was no other tort feasor from which to recover. *Id.* The trial court approved the settlement and Mrs. Everhart executed the release as next friend. *Id.*

After the settlement was approved, evidence arose indicating that while Westmoreland was behind the wheel, she was reading a map while Chris Jackson actually controlled the car. Mrs. Everhart filed suit against Jackson, and Jackson raised the general release as a defense. Seventeen months after the settlement was approved, Mrs. Everhart filed a motion to modify the terms of the release. The trial court responded by entering an order striking the language of the release as it related to "all other persons, firms or corporations." *Id.*

On appeal, the court found that the trial court had a duty to prevent the actions of Mrs. Everhart from prejudicing the rights of Shane, and such prejudice would result unless the court relieved her from the effect of the judgment approving the settlement. *Id.* at 338. The order of the trial court was affirmed.

Since Mrs. Mikesic's appointment as next friend related back to the date she filed the two petitions, the court's duty to prevent her from prejudicing Mr. Mikesic's rights related back to the same point in time. Logically then, the trial court's subsequent actions, allowing counsel to enter an appearance and allowing an amended petition to be filed by counsel, fulfilled the court's duty, were within its discretion and served to cure any imperfections in Mr. Mikesic's original petition for damages. Accordingly, even if Mrs. Mikesic's filing of the original petition did constitute the unauthorized practice of law, dismissal of the amended petition based on such fact would have been inappropriate.

Finding no other further reasons which would merit the dismissal of Mr. Mikesic's action, we conclude that under the facts of this case, the trial court erred in dismissing Mr. Mikesic's claims. The judgment is reversed and the cause is remanded for further proceedings.

All concur.