Julianne M. GROSS, Respondent,

v.

JACKSON COUNTY, MISSOURI, Appellant.

WD 80124

Missouri Court of Appeals, Western District.

OPINION FILED: January 9, 2018

Shannon K. Gordon, Kansas City, MO, Attorney for Respondent.

Jared D. Bustamante, Senior Assistant County Counselor, Kansas City, MO, Attorney for Appellant.

Before Division One: Cynthia L. Martin, Presiding Judge, and James Edward Welsh and Karen King Mitchell, Judges

Karen King Mitchell, Judge

Jackson County (County) appeals from a judgment assessing attorney fees, incurred by two guardians ad litem (GAL) in a dissolution action between Julianne (Wife) and Nicholas (Husband) Gross, against public funds. County argues that GAL fees cannot be assessed against public funds for a GAL appointment pursuant to Rule

52.02(k) and that the court improperly determined that Husband was indigent. We reverse and remand.

## Background

Wife and Husband were married on May 19, 2006, and three children were born of the marriage. On February 6, 2015, Wife filed a petition for dissolution. On Wife's motion, the court appointed GAL Abraham Kuhl to represent the minor children during the proceedings. The court ordered that both Wife and Husband contribute $1,000 each as security to be applied to GAL Kuhl's fees in the case. Wife complied with the order, but Husband did not. Husband filed a motion for leave to join Husband's parents (Grandparents) as third-party respondents because the primary asset owned by Husband and Wife was the marital home in which Grandparents held a joint ownership interest. The court granted Husband's motion, joined Grandparents as parties, and ordered Husband to file an amended answer reflecting the additional parties.

Though Husband initially participated in the litigation, he eventually ceased his participation, refusing to respond to discovery and other orders of the court. Husband's counsel advised the court that Husband had been diagnosed with delusional disorder and refused to further participate "due to his religious belief regarding divorce." Because Husband refused to communicate with his counsel, Husband's counsel requested the appointment of a GAL under Rule 52.02(k) [1] for Husband and requested to withdraw her representation of him. The court allowed Husband's counsel to withdraw and granted her request to appoint a GAL on Husband's behalf, under the authority of Rule 52.02(k), after finding that, "[b]y reason of mental infirmity, [Husband] is incapable of protecting his own interests in this lawsuit." The court appointed GAL Ashley Irwin and ordered Husband to deposit $2,000 as security for GAL Irwin's fees. Husband did not comply.

The same day the court appointed GAL Irwin, GAL Kuhl filed a Notice of Request for Guardian ad Litem fees to alert County of the possibility that GAL Kuhl might be seeking payment of fees from public funds and to request that County be given the opportunity to seek permissive intervention under Rule 52.12(b). The court granted GAL Kuhl's motion and granted County permission to intervene.

Thereafter, Grandparents filed their third-party answer and counter-petition, and in that pleading, Grandparents sought, for the first time, visitation rights with the minor children. In response to Grandparents' request, GAL Kuhl filed a motion to amend the order appointing him to seek a security deposit for his fees from Grandparents as well. Grandparents objected, arguing that they were in the case solely because of their property interest in the marital home and should not be held liable for any GAL fees. Wife filed a motion in support of GAL Kuhl's request, and, in response, Grandparents voluntarily dismissed their request for visitation, and GAL Kuhl withdrew his request to amend the appointment order.

Around the same time, GAL Irwin filed a Notice of Request for Guardian ad Litem fees to also alert County of the possibility that she might be seeking payment of her fees from public funds and to request that County be given the opportunity to seek permissive intervention under Rule 52.12(b). The court sustained GAL Irwin's request and granted County leave to intervene in the matter.

---

1. All rule references are to the Missouri Supreme Court Rules (2017).

Thereafter, County entered a limited appearance seeking dismissal of GAL Irwin's request for payment of fees from public funds. County argued that the court lacked any statutory authority to assess GAL Irwin's fees against public funds in light of the fact that she was appointed to represent Husband under Rule 52.02(k), which does not provide for any payment from public funds. GAL Irwin responded, arguing that, because her appointment arose during a dissolution proceeding, the payment provision of § 452.423.5(2)[2] allowing payment from public funds applied and permitted her to seek payment against County.

Following a trial on the dissolution, the court held a hearing on the assessment of fees. At the fees hearing, County argued that neither GAL should be able to obtain fees from public funds. As to GAL Kuhl, County argued, in part, that

> because of [Husband's] lack of production of documents in discovery and his nonadherence to the orders of this Court and the discovery process in general, that there could be no findings made as to [Husband's] financial stability or his current financial picture. [Administrative Order No. 2014-041 of the Jackson County Circuit Court] requires the Court to make those findings based on the specifics of 125 percent of the federal poverty statute.

> It is the County's contention that, because of [Husband's] nonadherence to discovery and orders in this case, that

this, in fact, precluded the Court from being able to make those findings. And therefore, since we cannot make a finding for [Husband], in his financial status, and with [Wife] being stipulated to as not indigent for the purpose of this case,[3] and with the Court's ruling on June 24 regarding the paternal grandparents that were intervenors in this cause as not being parties with respect to the children[4] and, therefore, not to be considered with respect to the guardian ad litem fees, the County would request that the Court find that there—no one in this case can be found indigent and that the guardians ad litem be allowed to pursue other venues in collection of their fees.

GAL Kuhl argued that the evidence demonstrated that Husband had no income. County argued that the evidence simply failed to demonstrate Husband's income, rather than demonstrating that he lacked any. County then argued that Administrative Order 2014-041 required the court to take into account all sources of income, "[a]nd the testimony was that [Grand]parents, who couldn't be—that are able to contribute as they did throughout the pendency of the divorce action, including during the marriage, do provide assistance to [Husband], and that is something that the Court should take into account in determining this as well." The court then verified that 125% of the Federal Poverty Guidelines, as applicable to Husband, would be an annual income of $14,850 or

---

**2.** All statutory citations are to the Revised Statutes of Missouri (2000), as updated through the 2015 Supplement.

**3.** Wife had previously stipulated that, for purposes of GAL fees, she was not indigent.

**4.** Previously, in response to County's argument that Grandparents, as parties, could be assessed GAL fees, the court declared that Grandparents, though parties, were parties

only "to a property thing" and had "nothing to do with the kids." Accordingly, the court stated that it was "specifically not going to grant—make them pay guardian ad litem fees." County has not argued on appeal that fees should be assessed to Grandparents— only that Grandparents' financial contributions to Husband should have been considered in the court's indigence determination.

less. Previously, the court had ordered Husband to pay child support to Wife and had calculated the amount owed by imputing income to Husband based upon a full-time minimum wage job, or $15,912 annually. Nevertheless, the court declared Husband indigent for the purpose of assessing GAL fees against County and assessed $1,750 of GAL Kuhl's fees to County.

As to GAL Irwin, County argued that "the government cannot be held liable for certain actions unless specific, prescribed variables are met," and that GAL Irwin's appointment was "not [a chapter] 452 appointment[ ]; therefore, [she] cannot petition for public funds." GAL Irwin acknowledged that chapter "452 either governs my appointment or it does not. There's no in between. It's a yes or no question." She further argued that,

> [i]f it does govern my appointment, then the administrative order 2014-041 explicitly applies, and therefore the Court has power to assess my fees from county funds under that authority. If it does not apply, then I have case law specifically authorizing the Court to make such an award based on its inherent power. Since there is no specific statute authorizing guardian ad litem appointments under Rule 52 or—under Rule 52, then it would rely on the inherent power of the Court to tax those funds against the County, which is garnered from a Missouri Supreme Court case, [*State ex rel.*] *Weinstein* [*v. St. Louis County*, 451 S.W.2d 99 (Mo. banc 1970) ] from 1970.

The court determined that GAL Irwin's appointment was "more in line with the 452 appointment, and I think it was needed, and so I'm going to rule in favor of [County] paying fees of the amount of $1,750." The court then entered an amended judgment, finding that GAL Irwin incurred "total fees and expenses in the amount of $6,704.98," for which County was liable, under Administrative Order 2014-041, for a total of $1,750 because Husband was indigent. The court further found that GAL Kuhl, appointed under § 452.423, was entitled to fees for 48.6 hours of work billed at $100 per hour and 9.5 hours billed at $80 per hour. The court ordered that Husband was responsible for 37.3 hours of the fees, purportedly representing his half of the obligation, and it entered a judgment against Husband in the amount of $3,730 [5] but ordered the fees paid from public funds due to Husband's indigence. Because of limits on the amount payable by public funds imposed by Administrative Order 2014-041, the court entered final judgment against County in the amount of $1,750 for GAL Kuhl's fees. Thus, County was assessed a total of $3,500 in GAL fees resulting from the dissolution action. County appeals.

### Standard of Review

"The determination of attorney fees[, including those incurred by a GAL,] is within the sound discretion of the trial court and should not be reversed unless the award is arbitrarily arrived at or is so unreasonable as to indicate indifference and lack of proper judicial consideration." *Barkho v. Ready*, 523 S.W.3d 37, 45 (Mo. App. W.D. 2017) (quoting *Trimble v. Pracna*, 167 S.W.3d 706, 714 (Mo. banc 2005)). But the question of "[w]hether a trial court has authority to award attorneys' fees is a question of law [that] we review *de novo*." *Id.* (quoting *St. Louis Title, LLC v. Talent Plus Consultants, LLC*, 414 S.W.3d 24, 26 (Mo. App. E.D. 2013)).

---

**5.** It is unclear how the court arrived at this figure, as half of the total hours charged by GAL Kuhl, including administrative work, was only 29.05 hours (adding 48.6 to 9.5 equals 58.1, half of which is 29.05), for which the total charges would have been $2,810 (24.3 hours billed at $100 per hour plus 4.75 hours billed at $80 per hour).

## Analysis

County raises three points on appeal. The first point challenges the court's authority to award fees to GAL Irwin in the absence of supporting statutory authority. The second and third points both challenge the court's determination that Husband was indigent. Point II argues that the court failed to account for income provided to Husband by Grandparents, and Point III argues that the court's decision to impute income to Husband in an amount exceeding 125% of the Federal Poverty Guidelines was inconsistent with its determination that Husband was indigent for purposes of ordering County to pay his portion of GAL fees. We reverse and remand.

### A. Legal Authority to Award GAL Fees from Public Funds

Section 452.423.5(2) allows a court to award a GAL "a reasonable fee for such services to be set by the court," and "[a]ward such fees as a judgment to be paid by any party to the proceedings or from public funds." "Public funds," as referred to in § 452.423.5(2), means funds from "the treasury of the county in which the court is held." *Stewart v. St. Louis Cty.*, 630 S.W.2d 127, 128 (Mo. App. E.D. 1981) (quoting § 476.270). Because counties have an economic interest, they are "permitted to intervene," for the limited "issue of taxing the GAL fees as costs to be paid from public funds." *Meyer v. Meyer*, 842 S.W.2d 184, 188-89 (Mo. App. E.D. 1992) (en banc).

On March 31, 2014, the presiding judge of the Jackson County Circuit Court issued Administrative Order 2014-041, addressing "Guardian ad Litem fees from public funds." That order addressed the procedure to be followed for awarding GAL fees from public funds under § 452.423.5(2), following the *Meyer* decision. The order provided the following necessary steps before awarding GAL fees from public funds:

(1) "Jackson County shall be joined as a party to the action";

(2) "the Court shall ... give notice to the Office of the Jackson County Counselor that a request for an order directing payment for guardian ad litem fees from public funds has been made";

(3) "the Court shall set a hearing, with notice to all parties, ... to determine whether ... public funds should be used to pay part or all of the guardian ad litem's fees";

(4) "the Court shall hear evidence regarding the financial status of the parties, including, but not limited to, Income and Expense Statements, Statements of Assets, income from other persons living in the party's household, and other relevant evidence"; and

(5) the court "shall determine whether or not either, or both, of the parents are indigent based on the evidence presented and whether the total household income exceeds 125% of the Federal Poverty Guideline Level[.]"

Administrative Order 2014-041, *Guardian ad Litem fees from public funds*, available at: https://www.16thcircuit.org/Data/Sites/1/media/court_administration/administrativeorders/2014-041-amended-guardian-ad-litem-fees-from-public-funds.pdf (last accessed Nov. 3, 2017). "[A]fter consideration of all the income and assets of the party, including income from other persons living in the party's household, either, or both, parents are indigent based on 125% of the Federal Poverty Guideline Level, the Court may order payment of guardian ad litem fees from public funds" as provided in the order. *Id.*

**B. The trial court lacked authority to order payment of GAL Irwin's fees from public funds.**

■ In its first point, County attacks the court's judgment, ordering a portion of GAL Irwin's fees to be paid from public funds, on the ground that the court lacked statutory authority to do so. As discussed, *supra*, GAL Irwin was appointed to represent Husband, under the authority of Rule 52.02(k), upon the court's finding that, "[b]y reason of mental infirmity, [Husband] is incapable of protecting his own interests in this lawsuit." [6] County argues that, because GAL Irwin was appointed under Rule 52.02(k), which contains no provision for awarding GAL fees from public funds, the court lacked authority to do so. We agree.

■ "Generally, with regard to awards of attorney's fees and costs, Missouri courts adhere to the 'American Rule,' which provides that each litigant should bear his or her own expenses." *Barkho*, 523 S.W.3d at 45 (quoting *Hinton v. Dir. of Revenue*, 21 S.W.3d 109, 112 (Mo. App. W.D. 2000)). "Exceptions, however, are made where fees are permitted by statute...." *Id.* In that situation, the court must adhere to the provisions of the statute regarding the award, and the court's failure to do so constitutes error. *See, e.g., Bober v. Bober*, 277 S.W.3d 294, 297 (Mo. App. E.D. 2009) (holding that trial court lacked discretion to assess fees where statute dictated fees must be waived under certain conditions).

GAL Irwin argued below that her appointment was, in fact, pursuant to § 452.423; thus, the authority for awarding GAL fees from public funds in § 452.423.5(2) applied. Her rationale was based on the language of § 452.423.1, which provides that "[i]n all proceedings ... for dissolution of marriage ... where custody, visitation, or support of a child is a contested issue, the court may appoint a guardian ad litem." GAL Irwin reasoned that, because the case was a dissolution of marriage case, involving contested issues of custody, visitation, and support, her appointment was necessarily pursuant to § 452.423.1 and, therefore, the court could rely on § 452.423.5(2) to order her fees paid from public funds. This argument, however, ignores the plain language of both the appointment order and § 452.423.3. The appointment order specifically stated:

> *Pursuant to Rule 52.02(k) of the Missouri Rules of Civil Procedure*, based upon the evidence and arguments presented and for good cause shown, the Court finds as follows: ... By reason of mental infirmity, [Husband] is incapable of protecting his own interests in this lawsuit. In order to protect [Husband]'s interests in defending this action, it is proper and necessary that a Guardian ad Litem be appointed for [Husband].

(Emphasis added.) And § 452.423.3(1) mandates that "[t]he guardian ad litem shall ... [b]e the legal representative *of the child* at the hearing." (Emphasis added.) Unlike other statutory provisions allowing appointment of a GAL for a parent,

---

6. Rule 52.02(k) provides:

Whenever it shall be suggested or affirmatively appear to the court that any person not having a duly appointed guardian is incapable by reason of mental or physical infirmity of instituting suit or of properly caring for the person's own interests in any litigation brought by or against such per-

son, the court shall inquire into the person's mental or physical condition for the purpose of the particular litigation and shall hear and determine such issue. If it is found to be proper for the protection of the person, the court may appoint a next friend or guardian ad litem for said person for the purpose of the particular litigation.

*see, e.g.,* § 211.462.2 (allowing for the appointment of a GAL to a parent who is either a minor or incompetent in a termination of parental rights proceeding), nothing in § 452.423 gives a court the authority to appoint a GAL for a parent, as its provisions are limited to GAL representation for children only. Thus, GAL Irwin's appointment was neither executed nor authorized under § 452.423. Accordingly, the fee provision of § 452.423.5(2) does not apply and did not give the court authority to order payment of GAL Irwin's fees from public funds.

Alternatively, GAL Irwin argued that the court had inherent authority to order payment of her fees from public funds under the holding in *State ex rel. Weinstein v. St. Louis County*, 451 S.W.2d 99, 102 (Mo. banc 1970). We disagree. The court no longer has the inherent authority to award GAL fees in situations covered by § 452.423, and while in situations not covered by § 452.423 the court may retain inherent authority to award GAL fees, that authority does not extend to the award of fees against the county.

In *Weinstein*, the Missouri Supreme Court determined that, "within the inherent power of the courts is the authority to do all things that are reasonably necessary for the administration of justice." *Id.* at 101. The Court held that, "[w]hen ... conventional sources do not provide necessary funds, the court does have inherent authority to do those things essential to the performance of its inherent and constitutional functions," such as "select[ing] and appoint[ing] employees reasonably necessary to carry out its functions ..., and to fix their compensation." *Id.* at 102.

Though *Weinstein* held that courts have inherent authority to appoint employees and fix their compensation, the court in *Meyer* noted that, because § 452.423 was enacted after *Weinstein* was decided, "trial courts should no longer rely on inherent power to award GAL fees because § 452.423 specifically authorizes these fees." *Meyer*, 842 S.W.2d at 189. But, assuming *Meyer's* holding is limited to cases involving GAL appointments under § 452.423, there still is no basis for ordering payment of GAL Irwin's fees from public funds because there must be express authority to order the payment of GAL fees from public funds.

We recognize that "[t]he provisions of Rule 52.02(k) are mandatory," *Mikesic v. Trinity Lutheran Hosp.*, 980 S.W.2d 68, 72 (Mo. App. W.D. 1998), and that "[t]he duty of the court to appoint [a guardian ad litem] necessarily implies the obligation to pay and the power of the court to fix reasonable compensation." *In re Interest of C.J.E.*, 878 S.W.2d 845, 847-48 (Mo. App. W.D. 1994) (quoting *In re Interest of Ray*, 602 S.W.2d 955, 958 (Mo. App. W.D. 1980)). But this power is necessarily limited to ordering payment against *parties* and does not extend to ordering payment from public funds in the absence of express statutory authority. "[S]tatutory authority is essential to obligate a sovereign for payment of attorney fees[;] ... the trial court has no inherent power to compel the sovereign to pay attorney fees as costs of the case." *In re Interest of K.P.B.*, 642 S.W.2d 643, 644-45 (Mo. banc 1982). "It is one thing to recognize that [a GAL] is entitled to a fee for h[er] services, but it is an entirely different matter whether the trial court may direct or enforce payment of any such fee by a sovereign. Without express and specific authority, it may not...." *Id.* at 645.

Here, because GAL Irwin was not appointed under § 452.423, the court was not authorized to order payment of her fees from public funds under § 452.423.5(2). And because there exists no statutory authority for an award of GAL fees from

public funds where the GAL was appointed under Rule 52.02(k), the court lacked the authority to enter such an award.

Point I is granted. The judgment against County for GAL Irwin's fees is reversed.

### C. The trial court erred in its determination of Husband's indigence.

 County's second and third points on appeal are directed to the award of a portion of GAL Kuhl's fees from public funds. County acknowledges that, unlike GAL Irwin, GAL Kuhl was appointed under the authority of § 452.423.1 to represent the interests of the children and, therefore, the payment provisions of § 452.423.5(2) apply. County argues, however, that the court failed to comply with the mandates of Administrative Order 2014-041—specifically with respect to its determination that Husband was indigent—and, therefore, erred in ordering the payment from public funds. We agree.

 As noted, *supra*, Administrative Order 2014-041 mandates certain procedures before the court may order payment of GAL fees under § 452.423.5(2) from public funds. Among those procedures are "hear[ing] evidence regarding the financial status of the parties, including, but not limited to, Income and Expense Statements, Statements of Assets, income from other persons living in the party's household, and other relevant evidence"; and "determin[ing] whether or not either, or both, of the parents are indigent based on the evidence presented and whether the total household income exceeds 125% of the Federal Poverty Guideline Level[.]"

Administrative Order 2014-041. Only "after consideration of all the income and assets of the party, including income from other persons living in the party's household," and making a determination that "either, or both, parents are indigent based on 125% of the Federal Poverty Guideline Level," does the court then have the authority to "order payment of guardian ad litem fees from public funds" as provided in the order.[7] *Id.* County's Point II is directed at the evidence considered by the court, and Point III is directed at the determination of Husband's indigence. Because of our resolution of Point III, it is unnecessary for us to reach Point II.

In Point III, County argues that the court's judgment was inconsistent with respect to its determination that Husband was indigent, while simultaneously imputing income to Husband—for child support purposes—that put him above the 125% Federal Poverty Guideline level and that there was no evidence to support the finding that Husband's income was below the Federal Poverty Guideline level. We agree that there was insufficient evidence to support the finding of indigency.

Under the Administrative Order, the court was not permitted to order payment of GAL Kuhl's fees from public funds without first determining that at least one parent was indigent, using 125% of the Federal Poverty Guideline level as the determining factor. Because Wife stipulated that she was not indigent for such purposes, the court was not at liberty to order fees paid from public funds unless there

7. The Administrative Order does not identify who carries the burden of proof regarding the indigence of one or both parties, but we do not believe it to be County. "The party requesting an award of attorney's fees has the burden of proving entitlement to such award." *Potts v. Potts*, 303 S.W.3d 177, 196 (Mo. App. W.D. 2010) (quoting *Andrews v. Andrews*, 290 S.W.3d 783, 787 (Mo. App. E.D. 2009)). Here, it is a GAL seeking payment of fees from public funds because of the alleged indigence of one or both parties. We need not decide whether it is the GAL or the parties that bear the burden because, in either case, it is not County, as County is not making the request.

was evidence to support a determination that Husband fell within the indigence guidelines of the Administrative Order. As the court noted during the fees hearing, 125% of the Federal Poverty Guideline level as applied to Husband would have been income of $14,850 or less per year.

The court made the following findings in the dissolution judgment as it pertained to Husband's financial status:

- "[Husband]'s employment status is unknown. [Husband] is believed to be unemployed, but [Husband] failed and refused to disclose any information regarding his employment history."

- "On or about April 15, 2014, in cause number 1416-MC06475, [Husband] was ordered to pay child support to [Wife] for the benefit of the minor children in the sum of $446.00 per month. As of the date of trial, [Husband] has failed to satisfy his obligations in said cause and owed arrears in excess of $11,000."

- "[Husband] failed and refused to disclose any financial information through the discovery process.... The Court received no evidence that [Husband] is presently employed."

- "[Husband]'s employment history includes a teacher, a painter, and a general laborer. He has also previously engaged in fundraising activities for his church."

- "[Husband] successfully completed high school and has a college degree. [Husband] has held numerous jobs since he became of working age, and based on testimony from [Wife] and [Husband]'s mother, he was never fired from any place of employment. Rather, [Husband] voluntarily departed all of his prior employment positions."

- "Sometime around the Thanksgiving holiday in 2015, [Husband] indicated to his parents that he would get a job. This statement is an indication of [Husband]'s ability to work."

- "[Husband]'s mother testified that she believed [Husband] should be obligated to support his children, which this Court takes as an admission that he has the ability to maintain gainful employment."

- "While this matter was pending, [Husband] traveled to and from Missouri on at least two (2) occasions. He traveled to Tennessee, Florida, Alabama, and Virginia on an unknown number of occasions. With the exception of one trip to Missouri, which was funded by [Husband]'s parents, there was no indication of how [Husband] was able to afford his frequent travels, as [Husband]'s mother denied that she and her husband were funding such trips."

- "[Husband] is the beneficiary of a Trust established by his parents. However, [Husband]'s mother testified at trial that proceeds from the Trust were not used to fund any of his travels."

- "Aside from gainful employment, the Court has no other reasonable explanation as to how [Husband] was able to afford his frequent travels."

There was evidence to support each of these findings.

At the end of trial, when verbally rendering factual findings, the court acknowledged that "[t]he exact economic status of [Husband] is unknown, as he chooses not to participate"; "[Husband] has failed to cooperate with any discovery. There have been no financial documents submitted. There has been no responses to questions regarding income, mental health, or property"; "we have no way of knowing what

assets [Husband] has because he's failed to cooperate in any way, shape, or form with providing documentation of any assets, any money, any income, anything. And that is—and, frankly, it's all conjecture as to what he has earned or can earn."

As County points out, the court's legal conclusion that Husband was indigent "was not supported by the evidence." While we understand the court's frustration with Husband's lack of cooperation and its desire to ensure the GALs were fairly compensated for their time and efforts, the court's determination of parental indigence must be based on "evidence regarding the financial status of the parties, including, but not limited to, Income and Expense Statements, Statements of Assets, income from other persons living in the party's household, and other relevant evidence." Administrative Order 2014-041.

Here, it appears that there was simply a lack of evidence pertaining to Husband's financial status. And, what evidence there was, suggested that Husband had some income. He was apparently a beneficiary of a trust set up by Grandparents. He has a college degree and has held a variety of jobs, but there was no evidence of his current employment status or bank accounts. As the court found, he obviously had some sort of income that allowed his frequent travel, but there was simply no evidence—with the exception of one trip—regarding his source of funds for that travel. Just as there was insufficient evidence to demonstrate Husband's income, there was insufficient evidence to demonstrate indigence. Accordingly, Point III is granted, and the assessment of $1,750 of GAL Kuhl's fees against public funds is reversed.

### Conclusion

The trial court lacked authority to enter a judgment against Jackson County for payment of any portion of GAL Irwin's fees, and the evidence presented did not support the court's legal conclusion that Husband is indigent for purposes of assessing a portion of GAL Kuhl's fees against Jackson County. Therefore, the judgments against Jackson County for GAL fees are reversed, and the matter is remanded for the sole purpose of allowing the court to reallocate, among the parties, the portion of GAL fees previously ordered payable by Jackson County.

Cynthia L. Martin, Presiding Judge, and James Edward Welsh, Judge, concur.